## HARRIS COUNTY APPRAISAL DISTRICT, Relator,

v.

## The Honorable David WEST, Judge, 269th Judicial District, Harris County, Respondent.

### Nos. A14–85–937–CV, A14–86–088–CV.

Court of Appeals of Texas, Houston (14th Dist.).

Feb. 27, 1986.

Kenneth Wall, Robert McConnell, Houston, for relator.

Harriet Hubacker, Houston, for respondent.

Before J. CURTISS BROWN, C.J., and MURPHY and ROBERTSON, JJ.

## OPINION

MURPHY, Justice.

These are two original petitions for writ of mandamus. The purpose of the petitions is to require the Honorable David West to vacate his order of December 5, 1985, and his order of January 31, 1986. We conditionally grant both writs of mandamus.

Relator is a political subdivision of the state of Texas responsible for appraising property within the Harris County district for ad valorem tax purposes. Relator is defendant in the suit out of which these petitions for writ of mandamus arise. The plaintiffs are a class of certain Harris County property owners.[1]

On September 4, 1985, an agreed order, jointly offered by the parties, was signed by respondent. The order granted declaratory and equitable relief to the class members from the alleged wrongful acts of relator during the process of appraising property for ad valorem purposes for 1984. Only one section of that order, however, is relevant to this mandamus proceeding.

In that section, relator was ordered to send by first class mail, within 30 days, a copy of the September 4th judgment and a copy of an affidavit with instructions for filing. The affidavit was part of the trial court's order and the instructions were written by Harriet Hubacker, attorney for the class. The mailing was ordered sent to each Harris County property owner whose 1985 valuation had been determined as a result of an informal or formal protest hearing.[2]

Relator was also ordered to post copies of the notice of class relief and the agreed judgment in its central and regional offices as well as its Board Meeting Room. Relator was further ordered to publish the notice of class relief in *The Houston Post* and *Houston Chronicle* on September 8, September 15, and December 8, 1985. Relator was also required to maintain a supply of affidavits and instruction sheets in its central and regional offices until December 31, 1985.

The agreed order further provided that class members desiring relief were required to file with Ms. Hubacker a fully executed affidavit together with a cashier's check or money order in the amount of $25.00 for attorney's fees made payable to Ms. Hubacker. The affidavits and money orders or checks were to be postmarked on or before December 31, 1985.

On December 2, 1985, Ms. Hubacker filed, in the same cause number under which the agreed order was entered, an unsworn motion entitled "Motion for Injunction in Aid of Enforcement of Judgment." On December 4, 1985, respondent heard the motion. It was undisputed that relator had mailed notices as required by the agreed order. The notices were mailed

1. The agreed order, *infra,* defined the members of the class as follows:

   All Harris County property owners whose property valuations were increased or whose applications for exemption were denied in 1984 by the Harris County Appraisal District without an opportunity to protest the increase of valuation, the lack of equalization or the denial of application for exemption before the Harris County Appraisal Review Board for 1984.

2. The mailing was not ordered sent to all members of the class nor to all members of the class entitled to relief. The agreed order defined those entitled to relief as follows:

   1. All Harris County real property owners whose 1984 appraised valuations were increased or applications for exemptions denied by the Harris County Appraisal District without an opportunity to protest the increase of valuation or the denial of the application for exemption before the Harris County Appraisal Review Board for 1984 *and* who either:
   a. Filed with the Harris County Appraisal District:
   (1) 1985 protest of valuation timely; or
   (2) 1985 rendition of value on or before 4/30/85; or
   (3) 1984 application for exemption *or*
   b. Sold the subject property prior to July 19, 1985;
   *or*
   2. All property owners who owned real property located in the Bridgestone, section 5 subdivision, Harris County during 1984.

   The mailing quite possibly was also ordered to non-class members, e.g., property owners who had a protest hearing in 1985 but who owned no property in Harris County in 1984.

to more than 100,000 Harris County property owners enclosed with relator's 1985 Appraisal Review Board Order. That the notices would be mailed as an enclosure with the Appraisal Review Board Order was known to the parties and the trial court when the agreed order was signed. No one contended relator did not fully comply with the notice provisions of the September 4th order.

On the following day, December 5, 1985, respondent nonetheless found relator's mailing with the Appraisal Review Board Order was not sufficient to give actual notice and further found a personal letter of explanation to 37,500 property owners from Ms. Hubacker was necessary to ensure actual notification.[3]

Respondent therefore entered the first order of which relator complains in our case number A14–85–937–CV. Respondent's order directed relator to deliver to Ms. Hubacker on or before 5 p.m., December 5, 1985, a check in the amount of $27,180.00 to cover the cost of mailing personal notice to potential class members. The order was made effective immediately and was not to be suspended in event of an appeal. On December 5, 1985, relator filed a motion to vacate the order. An oral stay was granted. On the following day the motion to vacate was denied and the oral stay was lifted.

On December 6, 1985, we granted leave to file mandamus and stayed the December 5th order.

On December 6, 1985, Ms. Hubacker mailed, at her expense, the notices ordered by respondent. Because of computer error by Ms. Hubacker's staff, 5000 letters were not printed for the December 6th mailing. Accordingly, Ms. Hubacker on December 24, 1985, remailed all the notices except to those persons who had returned affidavits or whose notices had been returned by the post office.

On January 22, 1986, Ms. Hubacker filed in the trial court, in the same cause number under which the agreed order was entered, an unsworn motion entitled "Motion to Allow Late Filed Affidavits."

The motion was heard by respondent January 31, 1986. At the hearing, the class presented evidence that after the September agreed order and after the mailing mandated by that order, Harris County property owners had filed additional protests for 1985 and were continuing to file protests until the last deadline for doing so, January 31, 1986. One hundred eleven thousand, one hundred seventy-three (111,-173) protests were filed before September 6, 1985 (two days after the agreed order was signed). After September 6, 1985, more than 5000 protests were filed. (The timeliness of 1455 of those protests was unresolved.)

Evidence was also presented demonstrating an increased response in return of affidavits after the two December mailings. Testimony was also elicited concerning returned mail.

As in the December hearing, no evidence of changed conditions was presented. There was no contention relator had failed to comply with respondent's September order.

At the conclusion of the hearing, the second order of which relator complains in our case number A14–86–088–CV was entered. That order, citing "new and unforeseen circumstances," changed and extended the December 31, 1985 deadline set forth in the September order. The order also required relator to perform additional acts, in connection with notice to the class, not required by the September order and to pay all costs for mailing additional individual notices to property owners. Based on respondent's findings, the January order was to accommodate persons who received Ms. Hubacker's two December mailings as

---

3. The September agreed order provided that class members who had successfully protested their property valuation in 1985 would have their 1984 valuation corrected to the value determined for 1985. The 37,500 property owners were those who had had their property valuation decreased by their 1985 protest and, on the average, would benefit from a $75.00 savings on property taxes.

well as all persons who had filed or will file protests after the entry of the September agreed order. The order was made effective immediately and was not to be suspended in event of an appeal.

On February 4, 1986, we granted leave to file mandamus. We stayed the January order on February 5, 1986. On that same day, the first mandamus, number A14–85–937–CV, was argued before this Court. At argument, the parties agreed to the submission of the second mandamus, our number A14–86–088–CV, on the briefs filed for the first mandamus and on the arguments made that day.

Relator argues the orders are void because (1) respondent lacked jurisdiction to enter them or (2) respondent lacked the power to change an agreed order.

■ Neither party contends the September order is not final. It, indeed, is clearly a final order, disposing of all parties and issues in the case. *North East Independent School District v. Aldridge*, 400 S.W.2d 893 (Tex.1966). The trial court's plenary power to modify its judgment expired 30 days after the signing of the judgment on October 4, 1985. TEX.R.CIV.P. 329b.

The class contends, however, the December order was issued under the trial court's inherent power to vacate or modify injunctive decrees. That power exists even absent statutory authorization or express retention of such power in the decree. TEX. R.CIV.P. 308; *Carleton v. Dierks*, 203 S.W.2d 552 (Tex.Civ.App.—Austin 1947, writ ref'd n.r.e.). The inherent power to modify final injunctive orders, however, exists (1) to enforce a judgment or (2) to accommodate changed conditions. *City of Seagoville v. Smith*, 695 S.W.2d 288 (Tex. App.—Dallas 1985, no writ); *Reynolds v. Harrison*, 635 S.W.2d 845 (Tex.App.—Tyler 1982, writ ref'd n.r.e.); *Johnson v. Texas Animal Health Commission*, 520 S.W.2d 810 (Tex.Civ.App.—Houston [14th Dist.] 1975, no writ). Neither circumstance is present in this case.

There was no contention at either the December or January hearing that enforcement was necessary because relator had failed to comply with respondent's September order. The relevant portion of the agreed order had been performed.

■ An order to enforce a judgment, furthermore, must not be inconsistent with the original judgment and must not constitute a material change in substantial adjudicated portions of the judgment. *Various Opportunities, Inc. v. Sullivan Investments, Inc.*, 677 S.W.2d 115, 118 (Tex.App. —Dallas 1984, no writ); *Reynolds*, 635 S.W.2d at 846. The December order clearly constitutes a material change in the original order. After relator had complied with the original order, the trial court, quite simply, attempted to order recompliance by a different method. A more material change can hardly be imagined.

The January order, similarly, amounts to a material change in the original order. The January order mandates further and different notice to persons not entitled to notice under the September order and the expenditure of relator's funds to provide that notice. The January order also extends deadlines for the return of affidavits entitling property owners to relief and extends the time periods for the performance of acts by relator. The materiality of the change is substantial.

■ Neither the December order nor the January order was based on changed conditions or circumstances. There was no allegation in the pleadings nor evidence at the hearings of changed conditions. The evidence in December proved not changed conditions but only unanticipated events—specifically, an unexpectedly low response to the court-ordered mailing.

Similarly, the evidence at the January hearing did not establish changed conditions. There was no evidence the tax laws or relator's rules as to deadlines for filing 1985 protests had changed or that those deadlines were not known by the parties and respondent at the time the agreed order was signed. Yet, by the terms of the

January order, property owners filing protests after entry of the September order are embraced in its relief and entitled to notice and extended deadlines.

That all property owners who would file 1985 protests had done so at the time the September agreed order was signed cannot reasonably have been assumed. That no property owners would protest after the order was entered and indeed until the final deadline of January 31, 1986, surely was not supposed. Certainly no evidence of such assumptions was offered. Yet filing of protests after the September order is characterized as "unforeseen."

■ The "new and unforeseen" circumstances referred to in the January order may have been unforeseen. They, most assuredly, were not unforeseeable. Unforeseen circumstances certainly do not constitute changed conditions.

Respondent, thus, had neither plenary nor inherent power to enter the December or January order.

We sustain relator's first argument. Because of our disposition of that point, it is unnecessary to address relator's second contention. The December order is void. Respondent should have granted relator's request to vacate it. The January order is void. It should be vacated.

We assume respondent will comply with the opinion of this Court. Should he fail to do so, writs of mandamus will issue.

The writs are conditionally granted.