**Marla B. MATZ, D.D.S., Trustee, Appellant,**

v.

**Roy I. BENNION and Neil C. Morgan, Appellees.**

No. 01–95–01222–CV.

Court of Appeals of Texas, Houston (1st Dist.).

Aug. 29, 1997.

---

6. Appellant does not contend that the jury charge at the punishment stage was erroneous.

Kristi L. Boylan, Houston, for Appellant.

Marvin Isgur, William R. Burke, Jr., Brad Beers, Houston, for Appellees.

Before HEDGES, ANDELL and HUTSON–DUNN,* JJ.

## OPINION

HEDGES, Justice.

Appellant, Marla B. Matz, D.D.S. (Matz), Trustee of the Marla B. Matz, D.D.S. Money Purchase Pension Plan (the plan), appeals orders entered by the trial court on July 10, 1995, July 28, 1995, and September 22, 1995 (sometimes referred to as "post-judgment orders"). The underlying judgment, which is the subject of the post-judgment orders, adopted an arbitration award relating to certain parcels of real estate: Vickery Woods, Beltway, Meadowbrook/Pinebrook II, Park Harbor, and Cypress Park (sometimes referred to as "the properties"). The properties and the interested parties have been the subject of five previous proceedings before this Court.[1]

### Factual and Procedural Background

During the pendency of this litigation, two limited partnerships, Chelan Associates and Vickery Woods Associates, held most of the ownership interests in the properties. Before 1993, Stewart A. Feldman was the sole limited partner in both partnerships and held a 27 percent interest in Chelan Associates and a 37 percent interest in Vickery Woods Associates. Roy I. Bennion was the general partner in Vickery Woods Associates, in which he held a 62.5 percent interest. Chelan, Inc. was the general partner of Chelan Associates, with a 73 percent interest. Bennion was the president and 100 percent owner of Chelan, Inc. Feldman and Bennion each directly owned small percentages of the properties. The management and ownership of the properties were governed by an investment agreement which contained an arbitration clause.

In 1992, Bennion and Feldman fell into a dispute about their joint business interests. The disagreement resulted in the filing of a lawsuit styled, *Intermarque Products, Inc. v. Feldman*, No. 92–07396 (125th Dist. Ct., Harris County, Tex.). Visiting Judge Solomon Casseb, sitting for Judge Don Wittig, presided over the suit. In 1992, Judge Casseb severed Feldman's counterclaims against Bennion relating to the properties into cause of action number 92–07396–A and ordered arbitration of these claims.[2] Judge Ruby Sondock was named arbitrator.

After conducting arbitration proceedings, Judge Sondock asked the parties to submit proposed drafts of an arbitration award. On March 24, 1993, she sent the parties her proposed draft of the arbitration award, which was largely based on Feldman's proposal.

On the same day, unknown to Judge Sondock and to Bennion, Feldman entered into a marital property agreement with Matz, his wife, in which he conveyed to her his interests in the partnerships. In the agreement, the parties specifically acknowledged that the partnership interests were currently the sub-

---

* Justice Hutson–Dunn, retired Justice, Court of Appeals, First District of Texas at Houston, sitting by assignment.

1. *Feldman v. Hon. Wittig*, No. 01–94–00656–CV, 1994 WL 443656 (Tex.App.—Houston [1st Dist.], August 16, 1994, orig. proceeding) (not designated for publication) (*Feldman I* ); *Ex parte Feldman*, No. 01–94–00561–CV, 1994 WL 443657 (Tex.App.—Houston [1st Dist.] August 16, 1994, orig. proceeding) (not designated for publication) (*Feldman II* ); *Ex parte Feldman*, 01–94–00917–CV, 1995 WL 29470 (Tex.App.—Houston [1st Dist.] January 26, 1995, orig. proceeding) (not designated for publication) (*Feldman III* ); *Matz v. Wittig*, No. 01–95–00854–CV, 1995 WL 544994 (Tex.App.—Houston [1st Dist.], September 12, 1995, orig. proceeding) (not designated for publication); *MBM Investment Real Estate, L.P., et al. v. Hon. Wittig*, No. 01–95–01566–CV, 1996 WL 38088 (Tex.App.—Houston [1st Dist.] January 23, 1996, orig. proceeding) (not designated for publication).

2. This appeal concerns only the judgment in cause number 92–07396–A.

ject of litigation. Feldman agreed to make his best efforts to substitute Matz as a limited partner or substitute limited partner. To the extent substitution could not be accomplished, he would hold the partnership interests as nominee or trustee for her, as appropriate. Soon thereafter, Matz placed these assets in the Marla B. Matz, D.D.S., Inc. Money Purchase Plan, of which she is trustee. The plan is a pension plan covered by the Employment Retirement Income Security Act of 1974 (ERISA).[3]

On August 13, 1993, a month before arbitration proceedings were scheduled to resume, counsel for Feldman wrote Judge Sondock to inform her that in light of the marital property agreement, he no longer owned any interest in the partnerships. Bennion did not add Matz or the plan to the arbitration proceedings, and neither Matz nor the plan sought to participate in the arbitration proceedings.

On November 2, 1993, Judge Sondock signed the arbitration award, which included the following:

### FINDINGS

9. That one of the powers expressly given the Arbitrator by the parties in the August 1989 agreement was the power to divide the interests of the parties.

10. That it is in the best interests of the parties that a final and permanent division of their jointly held interests and responsibilities be effected immediately.

12. That Feldman did in March 1993 attempt to "convey" his interest in properties subject to the arbitration proceeding to his wife by instrument filed but not disclosed until September.

13. The arbitrator finds that such "conveyance" does not diminish the power of the arbitrator with regard to such properties. To the extent that Feldman asserts an inability to comply with this award because of his "conveyance" to his wife, Bennion is relieved from transferring any property to Feldman. Further, to the extent that the "conveyance" to Feldman's wife prevents a division of jointly owned

properties by this award, the property shall be separated by partition in accordance with procedures prescribed in the Texas Rules of Civil Procedure with all expenses of partition to be paid from Feldman's share of the proceeds. To the extent that any such property cannot be partitioned in kind, the same shall be sold at public auction to be held no later than February 15, 1994, and the net proceeds, if any, after payment of taxes and expenses (except those of partition which shall be charged to the partition attributed to Feldman's ownership interest) shall be divided in accordance with the respective ownership interests of the parties.

## II.

### AWARD

14. Feldman shall himself and if necessary, shall cause his wife to transfer and convey, as is, to Bennion all of the right, title, and interest of Feldman as it existed prior to the "conveyance" to his wife in and to properties known as Beltway, Meadowbrook/Pinebrook II, Park Harbor, and Cypress Park subject to all outstanding liens, taxes, penalties or other existing encumbrances, if any, related to the Beltway, Meadowbrook/Pinebrook II, Park Harbor, and Cypress Park property.

15. In the event that Feldman's interests in Beltway, Meadowbrook/Pinebrook II, Park Harbor, and Cypress Park are conveyed to Bennion, Bennion shall transfer and convey, as is, to Feldman all the right, title and interest of Bennion in and to the Vickery Woods property. . . .

16. If by November 15, 1993 Feldman pays to Bennion, $65,000 as partial reimbursement for earnest money paid by Bennion on the earnest money contract on the S.W. Freeway property, Bennion shall release to Feldman all of Bennion's interest, if any, in the property on the S.W. Freeway property. . . .

22. That all documents effecting these findings and this award shall be executed

---

**3.** 29 U.S.C. §§ 1001–1461 (1994).

by all necessary parties on or before November 26, 1993.

23. That each party shall elect or designate the name(s) and/or entities to whom the above transfers shall be made on or before November 10, 1993.

24. That all payments, deliveries, designations, and elections required by these findings and this award shall be made or done on or before November 26, 1993.

25. That Bennion has no further obligations to Feldman, and Feldman has no further obligations to Bennion, regarding the future expenses and costs related to assets related to, or arising from, the Wolff litigation [the properties]....

Sondock refused Bennion's request to delete paragraph 13. On February 22, 1994, Judge Casseb adopted the arbitration award as the judgment of the court.[4] No appeal was taken from this judgment. No property was transferred or partitioned pursuant to paragraph 13. No public sale was held before February 15, 1994.

On March 3, 1994, Bennion initiated enforcement proceedings to compel the property exchange ordered under paragraphs 14 and 15 of the arbitration award. This action spawned several of the previously mentioned original proceedings before this Court. In the first proceeding, Feldman sought mandamus relief against Judge Casseb to command him to vacate an April 11, 1994 order that declared the marital property agreement void. *Feldman I*, slip op. at 1. In that opinion we held the trial court's order was void, saying:

> A trial court does not have jurisdiction to render a personal judgment against a person [Matz] unless a controversy exists between individuals and the controversy is legally presented for determination.... A judgment rendered against a person who was not served with citation in accordance with the mandatory rules relating to service of citation (and who did not waive service of citation or appear voluntarily) is void. *Id.* at 62 [*Strawder v. Thomas,* 846 S.W.2d 51, 62 (Tex.App.—Corpus Christi 1992)].

*Feldman I,* slip op. at 4–5 [citations omitted].

In his first habeas corpus proceeding, Feldman protested his incarceration for refusal to comply with Judge Casseb's orders to execute transfer documents. These documents included two special warranty deeds by which the limited partnerships, as grantors, conveyed their interests in the properties to Bennion, and Feldman conveyed to Bennion and Chelan, Inc. his interest in Vickery Woods, Beltway, Meadowbrook/Pinebrook II, Park Harbor, and Cypress Park. In our opinion, issued August 16, 1994, we agreed with Feldman that he should be discharged from the contempt order. We held that:

> As we have already noted, [Feldman] could not execute documents that would distribute to him that which is the property of Dr. Matz. Because [Feldman] could not receive any distribution of real property from the limited partnerships, he could not convey any real property to Bennion.

*Id.* at 10. We concluded that Judge Casseb's order was void because it was impossible for Feldman to comply with its terms.

On July 12, 1994, Neil Morgan, a party to the original *Intermarque* suit, but not to the arbitration, filed a "Motion for Order in Aid of Sale." He asked that the trial court order that Feldman execute a quitclaim deed to Bennion on the Park Harbor property so that a proposed sale of the property could be consummated. Morgan asserted that Feldman individually owned a 3.0523 percent undivided interest in the property and that the only interest in Park Harbor that Feldman had transferred to Matz was his interest owned in the limited partnership. On Sep-

---

4. The judgment provided:

All Motions to Amend, Change or Vacate the Arbitration Award dated November 2, 1993 rendered by the Honorable Ruby K. Sondock is [sic] denied, and the arbitration award as rendered is confirmed, except that the time deadline provided in paragraph 16 of said award is extended until thirty (30) days from this date.

It is further ORDERED of this Court in addition to confirming said award, all parties thereto are ORDERED to comply therewith and that the terms thereof shall be enforced as the Judgment of this Court.

SIGNED this 22nd day of February, 1994.

tember 12, Judge Casseb issued an order directing Feldman to execute the proffered quitclaim deed.

At a show cause hearing on September 20, Feldman refused to execute the quitclaim deed. Judge Casseb held Feldman in contempt and sentenced him to confinement for 90 days. Feldman again applied to this Court for a writ of habeas corpus. In our opinion granting Feldman's application, we agreed with him that that the trial court had ordered him to do something that exceeded that which the arbitration award contemplated. *Feldman III,* slip op. at 8–9.

On November 4, 1994, while the preceding habeas corpus action was pending in this Court, Judge Casseb ordered Bennion to make Matz a party. Matz was duly served. She filed her original answer, asserting a general denial and contending that ERISA preempted Bennion's claims.

On November 15, 1994, Bennion filed his first amended motion for declaratory relief and to enforce arbitration award and confirmation order. He asserted that the February 22, 1994 judgment was binding on Matz under the doctrine of res judicata because she was in privity with Feldman as successor to his interests in the partnerships, which she took with notice that the interests were the subject of litigation. He asked that the court require that Feldman and Matz transfer the property as provided in paragraphs 14 and 15 of the arbitration award.

On May 23, 1995, Bennion moved for entry of an order conveying the Beltway property, or, alternatively, for an order authorizing partition by sale of the Beltway property. He also requested a declaratory judgment that Chelan, Inc., as the general partner of Chelan Associates, had the legal authority to sell the assets of Chelan Associates.

On June 2, 1995, Morgan moved for leave to file amended pleadings entitled, "First Amended Counterclaim, Cross Claim and Third Party Claim," in which he asserted ownership interests in the Cypress Park and Park Harbor properties. He asked for a determination of the identity of the ownership interests in those two pieces of property and a judgment partitioning those two pieces of property by sale, or otherwise ordering their sale.

On June 16, 1995, Chelan, Inc., as the general partner of Chelan Associates, applied for dissolution of the partnership, and Bennion, as the general partner, applied for the dissolution of Vickery Woods Associates.

On June 26, 1995, Judge Wittig heard extensive argument on Bennion's and Morgan's enforcement motions. At the conclusion of the hearing, he instructed that the movants return July 10 with proposed orders reflecting the relief they requested.

On July 6, 1995, Matz filed a demand for a jury trial on all claims asserted against her by Bennion and Morgan. On July 10, 1995, in her capacities both as an individual and as trustee of the plan, she filed her opposition to Bennion's and Morgan's claims on the basis that the plan was not a party to the proceedings. She asked that the partnerships continue to operate in accordance with their respective partnership agreements and opposed the sale of the assets of the partnerships.

On July 10, Matz, individually, and as trustee of the Marla B. Matz, D.D.S., Inc., Money Purchase Plan, responded to Bennion's and Morgan's pleadings. She asserted that the plan was not a party to the suit and that the plan had a statutory right to approve or disapprove of the sale of partnership assets.

Also on July 10, 1995, Judge Wittig signed a "Judgment Nunc Pro Tunc." It contained the court's findings that (1) Matz, individually, and, as trustee, and the plan were successors in interest to Feldman with respect to the arbitration award; (2) the division of the property as stated in paragraphs 14 and 15 of the award was an essential element of the award; and (3) the fact that a deadline for the division had passed was not a bar to enforcement of the division. The court ordered the property sold by a receiver at a public sale. The court also ordered the dissolution of Chelan Associates and Vickery Woods Associates.

On July 27, 1995, Judge Wittig held a hearing to consider Matz's motion for rehearing and other requests for modification of the

July 10 order. He denied the motion for rehearing and modified the order in several respects. In a July 28, 1995 order, Judge Wittig found that the February 15, 1995 compliance date established in paragraph 13 of the arbitration award had passed at the time the February 22 judgment was signed. He modified the compliance date to October 15, 1995. He found that Vickery Woods Associates and Chelan Associates had notice of the litigation/arbitration proceeding and that both of these limited partnerships participated in it through the participation of Bennion, (the general partner of Vickery Woods Associates and the 100 percent owner of the general partner of Chelan Associates) and through the participation of the then sole limited partner, Feldman. Judge Wittig also held that to the extent that the partnerships were ultimately determined not to be parties, the general partner of each of those entities (i) had appeared as a party in the matter; and (ii) was charged with the dissolution of those entities pursuant to statute and to his court order. Additionally, he found that each of the entities, appearing and acting through its respective general partner, had consented to the jurisdiction of the court and was bound by the July 28 order. He ordered the appointment of a receiver to sell the property at public sale on August 1, 1995. He set August 2 as the date for a hearing to confirm the sale and August 4 as the date to approve the receiver's report of sale and for disbursement of proceeds. He ordered the proceeds distributed as follows: (1) unpaid property taxes, (2) closing costs, (3) receiver's expenses, and (4) payment of remaining proceeds to owners in accordance with the Texas Limited Partnership Act, the arbitration award, and as approved by the court. Finally, he ordered that "no person shall have any claims against the purchaser of property in accordance with the July 28 Order."

On July 31, 1995, Matz filed a motion for leave to file petition for writ of mandamus, asking that Judge Wittig be compelled to set aside the July 10 and July 28 orders. This Court overruled Matz's motion, holding that she had an adequate remedy by appeal. *Matz*, slip op. at 2.

On September 22, 1995, the trial court modified the July 28 order by amending the date of public sale of the partnerships' assets to October 13, 1995. The receiver held the sale on October 13, 1995. On November 17, 22, and 28, the court held hearings to confirm the sale, and on November 30, it ordered that the sale be consummated on December 29, 1995.

On December 27, 1995, Matz, Trustee and two entities referred to as MBM Investment Real Estate, L.P. and Vickery Woods Associates, L.P., filed a motion for leave to file petition for writ of mandamus asking this Court to set aside the trial court's orders of July 10, 1995; July 28, 1995; September 22, 1995; and November 30, 1995. We denied mandamus relief, holding that the movants had an adequate remedy by appeal. *MBM Inv. Real Estate, L.P.*, slip op. at 2. We noted that relators' posting of a supersedeas bond stayed the effect of the trial court's November 30, 1995 order until this appeal is determined.

## APPELLATE JURISDICTION

■ Appellee Morgan has moved to dismiss this appeal on the basis that it was not timely filed. He argues that this proceeding is an appeal of the appointment of a receiver, and as such, had to have been filed within 20 days of the initial appointment in order to be timely. Because Matz, Trustee failed to file the appropriate appeal within the appropriate time period, he contends, her appeal is untimely.

We do not agree that the paramount subject of this appeal is the appointment of a receiver. While Matz, Trustee may incidentally complain of that order, the real gravamen of her appeal is that the trial court erred in dissolving the partnerships and ordering the sale of their assets. Given those complaints, her appeal was timely filed.

We deny Morgan's motion to dismiss for want of jurisdiction.

## NATURE OF THE TRIAL COURT'S ORDERS

At the heart of this proceeding is a fundamental dispute about the nature of the post-

judgment orders, which are styled "Judgment Nunc Pro Tunc." Indeed, this appeal turns on the classification of these documents. We agree with Matz, Trustee that these documents are not judgments nunc pro tunc, because they do more than correct purely clerical errors. We must decide what they are, recognizing that a title of a document does not necessarily control the nature of its content. *See Hodge v. Smith,* 856 S.W.2d 212, 215 n. 1 (Tex.App.—Houston [1st Dist.] 1993, writ denied).

Matz contends that the orders were an amendment to the original judgment and as such were void because the trial court had lost plenary jurisdiction to change its judgment. Bennion argues that the documents are orders to enforce the trial court's original judgment, which the trial court had continuing jurisdiction to enter.

## JURISDICTION TO ENTER ORDERS

■ In point of error one, Matz asserts that the trial court lacked jurisdiction to amend the February 22, 1994 final arbitration judgment because the court's plenary power had lapsed 16 months before the amendments.

Different rules govern the jurisdiction of the trial court to accomplish different acts. A trial court has plenary power for 30 days after a judgment is signed to grant a new trial or to vacate, modify, correct or reform its judgment. Tex.R.Civ.P. 329b(d). It also has inherent authority and explicit statutory authority under Tex.R.Civ.P. 308 to enforce its orders and decrees beyond its plenary power. *Katz v. Bianchi,* 848 S.W.2d 372, 374 (Tex.App.—Houston [14th Dist.] 1993, orig. proceeding). The only limit on a trial court's authority to enforce its acts is "that enforcement orders may not be inconsistent with the original judgment and must not constitute a *material change in substantial adjudicated portions of the judgment." Id.* (emphasis added); *Harris County Appraisal Dist. v. West,* 708 S.W.2d 893, 896 (Tex.App.—Houston [14th Dist.] 1986, orig. proceeding).

We agree with Bennion that the post-judgment orders are orders enforcing the trial court's original judgment. We reject each of Matz, Trustee's specific arguments that certain terms of the orders constitute "a material change in substantial adjudicated portions of the judgment."

Matz, Trustee first argues that the orders materially change the original judgment in that the date by which the public sale of the properties was to be held was reset. The date specified in the arbitration award for a partition by public sale was February 15, 1994. The trial court did not sign the judgment confirming the arbitration award until February 22, 1994, which meant that compliance with this term of the judgment was impossible.

Matz, Trustee next argues that the order materially changes the judgment in that it deletes the requirement that Bennion makes his election of remedies by November 26, 1993. It is clear from a reading of the arbitration award as a whole that the purpose and intent of the arbitration proceeding was to divide Bennion's and Feldman's jointly held interests. There is nothing in the record before us to suggest that the February 15, 1994 public sale date or the November 26, 1993 "election" date were *substantially adjudicated* terms of the judgment. These dates implement the overriding intent of the judgment to divide the property interests. In the context of the arbitration award as a whole, they appear to be arbitrary dates selected for the purpose of carrying out the execution of the judgment. We find no indication that the dates themselves were material to the division scheme set out in the award. *See Pettitt v. Pettitt,* 704 S.W.2d 921, 924 (Tex.App.—Houston [14th Dist.] 1986, writ ref'd n.r.e.) (where divorce decree provided that marital domicile should be sold July 1, 1979, trial court did not abuse its discretion in 1984 order, appointing a receiver to sell the property to carry the decree into execution).

Matz, Trustee relies on *West* for the proposition that a court cannot enter an enforcement order to extend dates set in its judgment for implementing the judgment provisions. This case is distinguishable from *West.* In that case, the Harris County Appraisal District was ordered to notify prevailing class members that the trial

court had granted injunctive and equitable relief regarding their 1984 appraisal and that they had the right to file protests of their 1984 valuations until December 31, 1995. *West,* 708 S.W.2d at 894. The trial court later ordered that a more detailed notification be sent by the class counsel and ordered that Harris County Appraisal District pay mailing costs. *Id.* at 895. The obligations of the district were enlarged in other ways and the protest deadline was extended. *Id.* Our sister court held that "after [the appraisal district] had complied with the original order, the trial court, quite simply, attempted to order recompliance by a different method.... A more material change can hardly be imagined." *Id.* at 896.

In this case, as we have already explained, the postjudgment orders did "not constitute a material change in substantial adjudicated portions of the judgment." *Id.* Paragraph 13 of the original judgment expressly provided for a disposition of the property by means of a public auction, which is what the postjudgment orders were designed to implement.

■ Matz, Trustee next argues that the trial court erroneously added Matz, individually; Matz Real Estate Services, Inc.; Vickery Woods Associates, L.P.; MBM Investment Real Estate L.P. (formerly Chelan Associates, L.P.); the Marla B. Matz, D.D.S., Inc. Money Purchase Pension Plan, Oppenheimer & Co., Custodian; and Marla B. Matz, D.D.S., Trustee to its order. She contends that these parties cannot be bound by the order because they were not parties to the arbitration proceeding. As we discuss below under point of error two, we reject Matz, Trustee's argument that the trial court had no authority to bind her in its order or that the trial court could not properly dissolve Vickery Woods Associates and Chelan Associates unless they were parties to the suit and to the arbitration. Under that point, we also discuss the propriety of including Matz, Trustee as party to the order by virtue of the plan's privity with Feldman. Because the pension plan itself is represented by Matz, Trustee, the authority of the trial court to bind the plan

need not be separately addressed. There is no specific reference to Matz Real Estate Services, Inc. in the judgment. We cannot perceive any reason why a nonspecific reference to "other entities in privity with Matz" should represent a material change to the original judgment. Matz, individually, is not a party to this appeal and cannot now be heard to complain that she is a party to the orders.

■ Matz, Trustee complains that the court's orders "effectively void the Feldman/Matz March 26, 1993 Marital Property Agreement *sua sponte.*" We first observe that neither party to the agreement is a party to this appeal; therefore, the complaint is improperly raised. Second, even if it were properly before us, we see no merit to this argument. Matz individually took the partnership interest with full knowledge of competing outstanding claims. We know of no authority whereby the marital property agreement could somehow insulate the property from adverse claims under these circumstances. The agreement still stands: Matz's assignee still holds the property interests Feldman conveyed to her. Matz, Trustee ignores the fact that Feldman could convey no more than he had, and that if the agreement had not been executed, Feldman would have been the operative party to the judgment.

■ Finally, Matz, Trustee complains that the order erroneously purports to absolve Bennion and Morgan from any liability for future actions by preventing any lawsuit against the purchaser of the property. The language of the order to which Matz, Trustee refers is as follows: "No person shall have any claim against the purchaser arising out of the purchase of the property in accordance with the terms of this ... order." All this language does is formalize an inherent protection from liability of a purchaser if the sale is conducted as the trial court directed in its order. This provision does not represent a material change to the original judgment.

We overrule point of error one.

In point of error three, Matz, Trustee contends that the trial court erred in substan-

tially revising the arbitration award because "an arbitration award is equivalent to a judgment of a court of last resort." This point of error is premised on the assumption that the trial court's order materially changed the original judgment outside the plenary power of the court, an argument we have rejected.

We agree with Matz, Trustee that courts have little latitude in reforming arbitration awards. *Riha v. Smulcer*, 843 S.W.2d 289, 292 (Tex.App.—Houston [14th Dist.] 1992, writ denied). Judgments confirming arbitration awards are to be enforced as any other judgment. TEX.CIV.PRAC. & REM.CODE ANN. § 171.016 (Vernon 1997). We simply disagree that the trial court has altered or reformed the judgment based on the arbitration award.

We overrule point of error three.

## JURISDICTION OVER PARTNERSHIPS AND THE PLAN

In point of error two, Matz, Trustee asserts that the trial court lacked jurisdiction to adjudicate the interests of nonparty entities (the plan and the partnerships) in the postjudgment orders. The enforcement order dissolved the limited partnerships in which the plan held interests and made provisions for the sale of partnership assets.

The plan was not a necessary party to the trial court's enforcement proceedings concerning the sale of the partnerships' assets. The Texas Revised Limited Partnership Act provides that "on the application by or for a partner, a trial court may dissolve a limited partnership by judicial decree if it is not reasonably practicable to carry on the business of the limited partnership in conformity with the partnership agreement." TEX.REV. CIV.STAT.ANN. art. 6132a–1, section 8.02 (Vernon Supp.1997). Article 6132a–1, section 8.04(a) provides:

> A court of competent jurisdiction, on cause shown, may wind up the limited partnership's affairs on application of any legal partner or the partner's legal representative or assignee and, in connection with the winding up, may appoint a person to carry out the liquidation and may make all other orders, directions, and inquiries that the circumstances require.

TEX.REV.CIV.STAT.ANN. article 6132a–1, section 8.04(a) (Vernon Supp.1997). These sections do not require that the partnership itself, as an entity, be a party to an action seeking its own judicial dissolution and winding up.

Bennion, as the general partner for Vickery Woods Associates, and Chelan, Inc., as the general partner for Chelan Associates, applied for the dissolution of the respective partnerships on the grounds specified by section 8.02. The general partners also petitioned for the sale of the partnerships' assets. These actions conformed to the statutory provisions.

Moreover, not only were the general partners before the court, Matz, Trustee, as second assignee of the former sole limited partner, was also a party to the action. Inasmuch as all the beneficial owners of the partnerships were before the court, it had jurisdiction to judicially dissolve the partnerships and appoint a receiver to sell the assets. *See, e.g., Russell v. Campbell,* 725 S.W.2d 739, 743 (Tex.App.—Houston [14th Dist.] 1987, writ ref n.r.e.) (joinder of corporation not required where all the beneficial owners were before the court and had notice of request for partition in kind of assets).

The trial court did not lack jurisdiction to order the dissolution of the partnerships and the sale of their assets.

We overrule point of error two.

We affirm the trial court's enforcement orders.