Opinion issued February 1, 2007






 










In The

Court of Appeals

For The

First District of Texas






NO. 01-05-01076-CV






METROPOLITAN CASUALTY INSURANCE COMPANY, Appellant


V.


HORACE FOSTER, PERMANENT GUARDIAN OF THE ESTATE OF
RAMON ANTONIO RIVERA, A MINOR, Appellee






On Appeal from Probate Court No. 1

Harris County, Texas

Trial Court Cause No. 322,266






O P I N I O N

 Appellant, Metropolitan Casualty Insurance Company ("Metropolitan"),
appeals from the probate court's order enforcing the terms of a court-approved minor
settlement agreement between Metropolitan and appellee, Horace Marchant Foster,
the permanent guardian of the estate of Ramon Antonio Rivera, a minor. In its sole
issue, appellant argues that because the trial court did not enter a separate final
judgment, the order approving the settlement is not enforceable. 

 We affirm. Facts and Procedural History

 On April 29, 2001, Virginia Daniel and her husband, Joshua Wayne Daniel,
were killed in a motorcycle accident. Virginia is survived by her nine-year-old son
from a previous marriage, Ramon Antonio Rivera ("Tony"), and her parents, Horace
Marchant Foster and Darlene Goddard. At the time of her death, Virginia was
covered by an automobile insurance policy issued by Metropolitan with
uninsured/underinsured motorist benefits.

 On February 15, 2004, Tony's father filed a wrongful death suit on his son's
behalf against several parties involved in the accident; Metropolitan was not included
in this petition. On July 6, 2004, the trial court appointed Foster as the permanent
guardian of Tony's estate, and Foster subsequently substituted in as plaintiff in the
wrongful death suit. On December 30, 2004, Foster filed a motion to transfer the suit
to probate court, which the probate court granted. On January 7, 2005, Foster filed
an amended petition with the probate court alleging that Metropolitan had "failed and
refused" to pay any benefits under the policy covering Virginia.

 As a result of mediation, Foster reached an agreement to settle the wrongful
death suit. Apart from the wrongful death suit, Foster also reached an agreement with
Metropolitan to settle his claim against Metropolitan for $50,000. On April 6, 2005,
Foster filed a motion to approve the settlement with the probate court, stating, in
relation to Metropolitan, that Virginia "had a policy providing underinsured motorists
coverage up to $50,000" and proposing that Foster, as guardian of Tony's estate,
receive $17,000--34% of the proceeds--and that the remaining $33,000 be divided
equally between Foster, in his individual capacity, and Goddard. 

 The probate court held a hearing on April 11, 2006, at which Foster testified. 
Upon cross-examination by Metropolitan, Foster agreed that Metropolitan had
"agreed to pay the $50,000" and that once it paid this money, Metropolitan "[would]
no longer be liable for any further money at all, whatsoever." Foster also stated that
he understood that he was waiving his right to have his claim against Metropolitan
tried to a jury "in order to enter into this Settlement [sic]." At the conclusion of the
hearing, the court orally approved the settlement. That same day, the court also
entered an order approving the terms of the settlement agreement as explained in
Foster's motion and ordering that Foster be authorized to settle the wrongful death
claim and the claim against Metropolitan.

 At some point after this hearing, Metropolitan tendered to Foster for Tony's
benefit a check for $17,000. On July 29, 2005, counsel for Metropolitan faxed a
letter to Foster's attorney asking how the checks for Foster and Goddard should be
written and promising to send with them the applicable releases for execution. On
August 9, 2005, however, counsel for Metropolitan contacted counsel for Foster to
explain that Virginia's policy only provided $25,000 in coverage, not $50,000. In
response to a letter from Foster's counsel reaffirming that the settlement agreement
provided for a $50,000 payment, counsel for Metropolitan stated that because
Virginia's policy only provided for $25,000 in coverage, only $8,000 remained to be
divided between Foster and Goddard.

 In response to Metropolitan's refusal to pay the full $50,000, Foster filed a
motion with the probate court to enforce the order approving the settlement. After
holding a hearing on the motion to enforce, the probate court entered an enforcement
order finding, in relevant part, that:

 3. The order approving [the] settlement dated April 11, 2005 is a final
and unappealable order;


 4. There is no basis to clarify the order approving [the] settlement dated
April 11, 2005;


 5. Metropolitan Property & Casualty Insurance Company was required
to pay $50,000.00 as its part of the settlement;


 6. Metropolitan Property & Casualty Insurance Company has paid only
$17,000.00 of the $50,000.00 it was required to pay; and


 7. The order approving [the] settlement dated April 11, 2005 should be
enforced. 

The court ordered, therefore, that Metropolitan pay $16,500 each to Foster and
Goddard within 30 days. In response to this enforcement order, Metropolitan
instituted this appeal.

Analysis

 In its sole issue on appeal, Metropolitan argues that because the trial court's
order approving the settlement agreement between Metropolitan and Foster was not
a final, appealable judgment, Metropolitan properly exercised its right to withdraw
its consent to the settlement agreement and the court should not have entered an order
enforcing the settlement agreement. Foster responds that the trial court's order
approving the settlement agreement was a final order, and Metropolitan had 30 days
within which to file an appeal or a post-judgment motion, but did not. Thus, the trial
court's plenary power to modify the approval order expired and the order to enforce
the settlement was proper.

 Whether the Order Approving the Settlement Was Final

 Under the Texas Probate Code, "[a]ll final orders of any court exercising
original probate jurisdiction shall be appealable to the courts of appeals." Tex. Prob.
Code Ann. § 5(g) (Vernon Supp. 2006). A probate order is final "if it conclusively
disposes of and is decisive of the issue or controverted question for which that
particular part of the proceeding was brought, even if the decision does not fully and
finally dispose of the entire probate proceeding." Huston v. Fed. Deposit Ins. Corp.,
800 S.W.2d 845, 848 (Tex. 1990) (citing Fischer v. Williams, 331 S.W.2d 210, 213
(Tex. 1960)). In other words, a probate order is final and appealable if it finally
adjudicates a substantial right; if the order merely leads to further hearings on the
issue, it is interlocutory. Id.; Roach v. Rowley, 135 S.W.3d 845, 848 (Tex.
App.--Houston [1st Dist.] 2004, no pet.).

 Here, the probate court's April 11, 2005 order approving the settlement was
final. Because he had reached a settlement agreement with all parties to the wrongful
death suit and a separate settlement agreement with Metropolitan for $50,000, Foster
filed a motion in the probate court for approval of the settlement made on Tony's
behalf. At a hearing on the motion, Foster testified on cross-examination that
Metropolitan had agreed to settle with Foster in exchange for a release of all claims
against it and that Foster had waived his right to have a jury decide the issue. The
court approved the settlement and ordered Metropolitan to pay $50,000--$17,000 to
Foster on Tony's behalf, and $16,500 each to Foster and Goddard in their individual
capacities in accordance with Foster's proposal. This was a final adjudication on
Foster's claim against Metropolitan; no further hearings were necessary and none was
held. See Roach, 135 S.W.3d at 848. Thus, the approval order conclusively disposed
of and was decisive on the issues of whether Foster had relinquished all claims
against Metropolitan and how much Metropolitan would pay in return. See Huston,
800 S.W.2d at 848 (citing Fischer, 331 S.W.2d at 213). The approval order,
therefore, was final. See Tex. Prob. Code Ann. § 5(g).

 Whether the Order Enforcing the Settlement Was Proper

 Because the approval order was final and had the same force and effect as a
judgment, (1) Metropolitan had 30 days to appeal the order or to file a post-judgment
motion. See Tex. R. App. P. 26.1; Tex. R. Civ. P. 329b(g). It did neither. Thus, the
court's plenary power to vacate, modify, correct, or reform the approval order expired
on May 11, 2005--30 days after it was signed. See Tex. R. Civ. P. 329b(d). Even
though the court's plenary power had expired, the court retained the power to correct,
at any time, any clerical error in the order (2) and its inherent power to clarify or enforce
the order. See Shackelford v. Barton, 156 S.W.3d 604, 607 (Tex. App.--Tyler 2004,
pet. denied); Hurley v. Hurley, 960 S.W.2d 287, 288 (Tex. App.--Houston [1st Dist.]
1997, no pet.). 

 The approval order needed no clarification. Foster filed a motion for approval
of the settlement with the court stating that Foster had reached an agreement with
Metropolitan to settle his claim against for Metropolitan for $50,000. Upon cross-examination by Metropolitan at the hearing on this motion, Foster agreed that
Metropolitan would pay a total of $50,000 to settle Foster's claim and that, in return,
Foster was waiving his right to a jury trial on the issue and Metropolitan would no
longer be liable "for any further money at all, whatsoever." At the conclusion of the
hearing, the court orally approved this agreement. That same day, the court also
entered a written order approving the terms of the settlement agreement as explained
in Foster's motion and ordering that Foster be authorized to settle the claim against
Metropolitan. At no time prior to the court's approval order did Metropolitan object
to Foster's explanation of the settlement agreement in the motion; nor did
Metropolitan seek, within 30 days of its signing, to have the approval order vacated,
modified, corrected, or reformed. See Tex. R. Civ. P. 329b(d). In fact, Metropolitan
itself, in questioning Foster at the hearing, stated the value of the settlement as
$50,000 and later paid $17,000 to Tony in partial satisfaction of the settlement
agreement. Thus, the approval order contained no clerical error; nor did it need
clarification. See Tex. R. Civ. P. 329b(f); Shackelford, 156 S.W.3d at 607; Hurley,
960 S.W.2d at 288. 

 Because the approval order was final and needed no clarification, and because
Metropolitan did not discover its mistake and seek within 30 days of the approval
order's signing to have it vacated, modified, corrected, or reformed, the court properly
exercised its inherent power to enforce the approval order. See Shackelford, 156
S.W.3d at 607; Hurley, 960 S.W.2d at 288; see also Tex. Gov't Code Ann.
§ 21.001(a) (Vernon 2004) ("A court has all powers necessary for . . . the enforcement
of its lawful orders . . . ."). The only limit on a trial court's enforcement order is that
the order "may not be inconsistent with the original judgment and must not constitute
a material change in substantial adjudicated portions of the judgment." Matz v.
Bennion, 961 S.W.2d 445, 452 (Tex. App.--Houston [1st Dist.] 1997, writ denied). 
Here, the enforcement order reaffirmed that Foster and Metropolitan had settled for
$50,000 and ordered Metropolitan to pay $16,500 each to Foster and Goddard in their
individual capacities. This order was consistent with and did not constitute a change
to the original approval order. See Matz, 961 S.W.2d at 452. Thus, the probate court
properly exercised its inherent power to enforce the order approving the settlement
agreement between Foster and Metropolitan. See Shackelford, 156 S.W.3d at 607;
Hurley, 960 S.W.2d at 288; see also Tex. Gov't Code Ann. § 21.001(a).

 We overrule Metropolitan's sole issue on appeal.

Conclusion

 We affirm the enforcement order of the trial court.

 


 Evelyn V. Keyes

 Justice


Panel consists of Justices Nuchia, Keyes, and Higley.
1. Maxfield v. Terry, 885 S.W.2d 216, 220 (Tex. App.--Dallas 1994, writ denied) ("Under
Texas law, probate orders are the functional equivalent of a judgment when the order finally disposes
of a particular issue between the parties.").
2. See Tex. R. Civ. P. 329b(f).