Opinion to: SJR TGT SN TJ EVK ERA GCH LCH JB









Opinion issued March 30,
2006






 

 

 

 

 













 

     

 

 

 

 

 

In The

Court of Appeals

For The

First District of Texas

 




 
 
 
 
 
 
 
 
 
 
 
 
 
 
 


 



NO. 01-04-00905-CV

 




 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 


 



BANK ONE, N.A., Appellant

 

V.

 

DOUGLAS W. WOHLFAHRT, Appellee

 

 



On Appeal from the 11th District Court

Harris County, Texas

Trial Court Cause No. 1986-31785A

 








 

 



O P I N I O N

 

          In
a post-judgment garnishment proceeding, appellant, Bank One, N.A., sought to execute
on a judgment that its predecessor-in-interest had obtained against appellee,
Douglas Wohlfahrt, in 1987.  The trial
court granted partial summary judgment to Wohlfahrt based on payment and
awarded him $3,878.44 after a jury found Bank One had wrongfully garnished his
bank account.  On appeal, Bank One
contends the trial court erred in (1) granting partial summary judgment to
Wohlfahrt on the ground that he had fully paid the judgment; (2) submitting
Wohlfahrt’s wrongful garnishment counterclaim to a jury; and (3) allowing Wohlfahrt
to withdraw certain funds from the registry of the court.  We hold that the trial court should not have
granted partial summary judgment to Wohlfahrt based on payment, and therefore
reverse and remand the cause for further proceedings.

Background

          In 1985, Wohlfahrt executed two
promissory notes to Citizens Bank Houston, Bank One’s predecessor-in-interest.[1]  Wohlfahrt failed to repay the notes as
agreed, leading to the bank’s collection lawsuit in 1986.  The trial court signed a default judgment
against Wohlfahrt in March 1987.  Two
months later, the trial court set aside the default judgment and signed an
Order of Agreed Judgment, which states that Wohlfahrt owes the bank $107,000,
together with post-judgment interest at the rate of ten percent per annum until
the debt is paid (“the Judgment”).

          Wohlfahrt
failed to pay the Judgment and, in 1989, the bank sought a turnover order and
appointment of a receiver for Wohlfahrt’s medical practice.  In August 1989, the parties entered into an
“agreement in settlement of” the receivership proceeding (“the Settlement
Agreement”).  Pursuant to the Settlement
Agreement, the parties agreed that Wohlfahrt owed $107,000, plus $24,419.54 in
accrued post-judgment interest and $10,007.11 in post-judgment attorney’s fees the
bank had incurred in attempting to collect the debt.  The parties further agreed that interest
would continue to accrue at the rate of ten percent per annum, and that the
bank would refrain from pursuing its collection rights and remedies against
Wohlfahrt as long as he made payments of $3,000 to the bank on the fifteenth of
every month.

          From
August 1989 through January 1994, Wohlfahrt made a series of payments to Bank
One.  In September 1994, Bank One sent
Wohlfahrt’s wife a payment summary showing an outstanding balance of
$27,373.30.  One year later, Wohlfahrt
offered to settle the debt with a payment of $10,000, but the parties did not
reach an agreement.

          In
February 1999, Bank One filed a motion for scire facias to revive the Judgment.[2]  The trial court signed an Order Reviving
Judgment in July 1999.  Two years later,
Bank One instituted this post-judgment garnishment proceeding.  In its application for writ of garnishment
and affidavit in support, Bank One stated that it had a valid and subsisting
Judgment against Wohlfahrt from 1987, which was revived by the court in 1999,
and that Wohlfahrt still owed $48,621.90 on the Judgment.  The garnishee, Independence Bank, filed an
answer stating that it had frozen $18,408.71 belonging to Wohlfahrt;
Independence Bank tendered that amount to the court and asked that it be
discharged.

          Wohlfahrt
subsequently filed a motion to dissolve the writ of garnishment, contending
that he had paid off the Judgment in January 1994.  Bank One responded with a motion for judgment
in garnishment.  One month later,
Wohlfahrt counterclaimed for wrongful garnishment against Bank One.  The trial court granted Bank One’s motion for
judgment in garnishment and discharged Independence Bank from the case.

          Wohlfahrt
continued to argue that he had fully paid the Judgment and asked the trial court
to set a supersedeas bond and abate discovery by Bank One.  Wohlfahrt’s wife thereafter deposited $37,000
in the registry of the court; a handwritten note included with the money stated,
“On behalf of Douglas W. Wohlfahrt, $37,000 is being placed in the registry of
court [sic], to be held until the Judge releases to winning party.”

          Bank
One subsequently filed a motion for referral to a special master.[3]  The trial court appointed banking expert
Charles L. Williams as Special Master “for the purpose of reviewing the
submissions of the parties, conducting a hearing if necessary, calculating the
outstanding balance of the debt based upon the documents produced by the
parties, and filing a report with his findings.”  In the proceedings before the Special Master,
Wohlfahrt argued that the $107,000 Judgment had been “more than paid in
full.”  Bank One asserted that, in
calculating the amount of the outstanding debt, the Special Master should look not
only at the Judgment itself, but also at the Settlement Agreement, which
required Wohlfahrt to pay an additional $10,007.11 in attorney’s fees.  At the outset of his report, the Special
Master stated as follows:

The Plaintiff and Defendant . . . have a dispute about
the legal effect of whether a settlement agreement was reached by the Plaintiff
and the Defendant on or about August 29, 1989 via the letter of the same
date.  Apparently, both sides disagree
about the legal effect of this document relating to the payment of the disputed
debt.  While I have been provided with
oral arguments from both attorneys, I defer to the Court for a ruling on any
legal issues related to this topic. . . .  Depending on the Court’s ruling on these legal
disagreements, I may be required to provide further analysis of the amount of
debt owed.

 

The Special Master then concluded
that, taking into account the additional $10,007.11 owed by Wohlfahrt pursuant
to the Settlement Agreement, the outstanding balance on the debt as of January
6, 1994 was $31,290.35.

          In
November 2003, Wohlfahrt and Bank One filed cross-motions for summary judgment.  The trial court granted partial summary
judgment to Wohlfahrt on the ground that he had fully paid the entire amount of
the Judgment.  The case then proceeded to
trial on Wohlfahrt’s wrongful garnishment counterclaim.  In June 2004, the jury returned a verdict
against Bank One, finding that the sworn affidavit filed by Bank One in support
of its application for writ of garnishment was false with regard to the
allegation that Bank One had a valid and subsisting judgment against Wohlfahrt.  Bank One filed a motion for judgment
notwithstanding the verdict.  The trial
court partially granted Bank One’s motion and voided the damages award of
$9,824.99 for “[p]enalties and taxes paid on funds paid into the registry of
the court,” as well as the award of $24,000 for attorney’s fees, which left an
award of $885.82 for “[b]ank fees, penalties, and charges.”  Wohlfahrt “elected to recover in lieu of
actual damages found by the jury, interest at the legal rate allowed by law on
the $18,408.71 found by the jury to have been wrongfully garnished,” for a
total of $3,878.44.  The trial court
rendered final judgment for Wohlfahrt accordingly.  On the same day, the court signed an order
(1) releasing the garnished funds to Wohlfahrt and (2) allowing him to withdraw
the $37,000 his wife had deposited in the registry of the court.  This appeal followed.

Standard of Review

          Our
review of a summary judgment is de novo. 
Provident Life & Accident Ins. Co. v. Knott, 128 S.W.3d 211,
215 (Tex. 2003).  Under the traditional
standard for summary judgment, the movant has the burden to show that no
genuine issue of material fact exists and that judgment should be granted as a
matter of law.  Tex. R. Civ. P. 166a(c); KPMG Peat Marwick v. Harrison
County Hous. Fin. Corp., 988 S.W.2d 746, 748 (Tex. 1999).  We view all evidence in a light favorable to
the nonmovant and indulge every reasonable inference in the nonmovant’s
favor.  Provident Life, 128 S.W.3d
at 215.  When both sides move for summary
judgment and the trial court grants one motion and denies the other, we
consider both motions, their evidence, and their issues, and we may render the
judgment that the trial court should have rendered.  See CU Lloyd’s of Tex. v. Feldman, 977
S.W.2d 568, 569 (Tex. 1998).

Analysis

          Bank
One contends the trial court erred in granting partial summary judgment to
Wohlfahrt on the ground that he had fully paid the Judgment.  Rather, Bank One asserts, the trial court
should have granted its own motion for summary judgment because the evidence
conclusively establishes that Wohlfahrt still owed money on the Judgment at the
time Bank One commenced the garnishment proceeding.

Amount of the Debt

          Garnishment
is a proceeding in which the property, money, or credits of a debtor that are
in the possession of another—the garnishee—are applied to the payment of the
debt.  Bank One, Tex., N.A. v. Sunbelt
Sav., F.S.B., 824 S.W.2d 557, 558 (Tex. 1992).  Garnishment is purely a statutory remedy, and
the statutory provisions are strictly construed:

The process of garnishment is an inquisitorial proceeding, given
to ascertain these facts, so that the effects of the original defendant might
be reached and subjected to the payment of his just debts.  The act giving this remedy is not entitled
to, nor has it ever received, a liberal construction in favor of the party
resorting to the remedy.

 

Jemison v. Scarborough, 56 Tex. 358, 361 (1882); see also Thompson
v. Harco Nat’l Ins. Co., 997 S.W.2d 607, 611 (Tex. App.—Dallas 1998, pet.
denied), overruled in part on other grounds by John v. Marshall Health
Servs., Inc., 58 S.W.3d 738, 741 (Tex. 2001); Owen Elec. Supply, Inc. v.
Brite Day Constr., Inc., 821 S.W.2d 283, 286 (Tex. App.—Houston [1st Dist.]
1991, writ denied).  A garnishor may
obtain a writ of garnishment if it has a “valid, subsisting judgment” and makes
an affidavit that, within its knowledge, the judgment debtor does not possess
property in Texas subject to execution sufficient to satisfy the judgment.  Tex.
Civ. Prac. & Rem. Code Ann. § 63.001(3) (Vernon 1997); Thompson,
977 S.W.2d at 612.

          Here,
in support of its application for writ of garnishment, Bank One relied on the
Judgment, as revived by the trial court’s 1999 order.  Bank One stated that the Judgment is final,
valid and subsisting, and remains unpaid. 
Nowhere in its application for writ of garnishment and supporting
affidavit did Bank One indicate that it was also attempting to garnish funds
owed by Wohlfahrt pursuant to the Settlement Agreement.  Yet, Bank One took the position both before
the trial court and the Special Master, and in its cross-motion for summary
judgment, that the $10,007.11 in attorney’s fees owed by Wohlfahrt pursuant to
the Settlement Agreement (and not included in the Judgment) should be included
in calculating the amount owed by Wohlfahrt under the Judgment.  The trial court rejected this argument in
denying Bank One’s cross-motion for summary judgment.  We agree with the trial court’s
determination.

          A
trial court has plenary power to vacate, modify, correct, or reform its
judgment within thirty days after signing it.[4]  See
Tex. R. Civ. P. 329b(d).  Thereafter, the trial court has inherent
power to “cause its judgments and decrees to be carried into execution.”  Tex.
R. Civ. P. 308; Bridas Corp. v. Unocal Corp., 16 S.W.3d 887, 889
(Tex. App.—Houston [14th Dist.] 2000, pet. dism’d w.o.j.).  The only limit on this authority is that
enforcement orders may not be inconsistent with the original judgment and may
not constitute a material change in substantial adjudicated portions of the
judgment.  Katz v. Bianchi, 848
S.W.2d 372, 374 (Tex. App.—Houston [14th Dist.] 1993, no writ).  A post-judgment enforcement order may
properly require performance only of the obligations imposed by the final
judgment.  Id. (citing Wagner
v. Warnasch, 156 Tex. 334, 337–38, 295 S.W.2d 890, 892 (1956)).

          The
Settlement Agreement is not part of the Judgment.  Rather, the parties entered into the Settlement
Agreement more than two years after the trial court had signed the Judgment.  The Settlement Agreement alters the terms of
the Judgment to the extent it requires Wohlfahrt to pay the additional sum of
$10,007.11.  Given that Bank One’s
application for writ of garnishment was premised upon the terms of the
Judgment, and not upon any additional obligations imposed by the Settlement
Agreement, the trial court correctly determined that the terms of the
Judgment—not the Settlement Agreement—govern payment, because the parties never
reduced the Settlement Agreement to a judgment.[5]  Cf. Holtzman
v. Holtzman, 993 S.W.2d 729, 733 (Tex. App.—Texarkana 1999, pet. denied)
(rejecting appellant’s contention that “the settlement agreement should be
treated as a part of the judgment”).  Pursuant
to the terms of the Judgment, Wohlfahrt owes Bank One $107,000, plus
post-judgment interest at the rate of ten percent per annum.

Evidence of Payment

          Having
determined that we are confined to the terms of the Judgment, we now consider
the parties’ summary judgment evidence concerning the issue of payment.  In support of his motion for summary
judgment, Wohlfahrt provided the affidavits of his wife, Lynn, and his
accountant, J.W. Daubert, III.  Lynn’s
affidavit summarizes the dates and amounts of the payments made by Wohlfahrt
and concludes that the payments total $156,039.02.  Daubert’s affidavit references a spreadsheet
he prepared to track the date and amount of each payment made by Wohlfahrt,
along with a breakdown indicating the portion of each payment that corresponds
to principal and the portion that corresponds to interest.  The spreadsheet concludes that Wohlfahrt paid
off the Judgment with his fifty-third payment on January 15, 1994.  Daubert assumes in the spreadsheet that
Wohlfahrt made every payment on the fifteenth of the month.[6]

          In
determining whether the trial court properly granted partial summary judgment
to Wohlfahrt on the issue of payment, we view all the evidence in a light
favorable to Bank One and indulge every reasonable inference in Bank One’s favor.  In support of its cross-motion for summary
judgment, Bank One provided the affidavit of its First Vice President, Laurel
Varney-Mason.  Varney-Mason authenticated
a spreadsheet detailing Wohlfahrt’s payment history, as compiled from numerous
bank records and canceled checks.  The
spreadsheet indicates that, after applying all of Wohlfahrt’s payments to the
subject debt, he still owed $31,227.47 as of January 10, 1994.  Bank One’s spreadsheet contains a fundamental
error, however, because it improperly includes the $10,007.11 in attorney’s
fees from the Settlement Agreement—that is, the spreadsheet incorrectly assumes
that Wohlfahrt owed $117,007.11 instead of $107,000.  We have already determined that our analysis
is confined to the amount of the Judgment and that we may not consider the
additional obligations imposed by the Settlement Agreement.  As such, we do not indulge the presumption
that Wohlfahrt owes an additional $10,007.11. 
Importantly, however, Bank One’s spreadsheet also indicates that the
majority of Wohlfahrt’s payments were not made on the fifteenth of the month.  Many were made on the seventeenth or
nineteenth of the month, others were made on the twentieth or even later, and Wohlfahrt
skipped some payments entirely.[7]  In
addition, Bank One’s spreadsheet indicates that one payment was returned for
insufficient funds.[8]

Viewing this evidence in a light favorable to
Bank One, we conclude that the trial court erred in granting partial summary
judgment to Wohlfahrt on the ground that he had paid off the Judgment.  If we accept as true, which we must for
summary judgment purposes, the fact that Wohlfahrt made most payments after the
fifteenth of the month, missed some payments entirely, and had one check
returned for insufficient funds, then Daubert’s interest and principal
calculations are inaccurate, because he assumed that Wohlfahrt made every
payment on the fifteenth of every month. 
The Judgment expressly provides for post-judgment interest at the rate
of ten percent per annum.  Daubert
assumed that each payment was made on the fifteenth of the month and performed
his interest calculations accordingly. 
However, if most payments were not made on the fifteenth of the month,
as Bank One’s evidence indicates, then Daubert’s calculations understate the
amount of accrued interest, casting doubt on his conclusion that Wohlfahrt paid
off the Judgment.  As a result of this
discrepancy, Wohlfahrt’s summary judgment evidence does not conclusively prove
that he paid off the Judgment and that judgment should be granted for him as a
matter of law.

Nor is summary judgment appropriate for Bank One.  Although the summary judgment evidence does
not conclusively prove that Wohlfahrt paid off the Judgment, it also does not
conclusively prove the opposite—that Wohlfahrt failed to pay off the Judgment,
as Bank One contends.  As already
discussed, Bank One’s summary judgment evidence is premised upon the incorrect
assumption that Wohlfahrt owed an additional $10,007.11 pursuant to the
Settlement Agreement.  As we similarly
have determined with respect to Daubert’s spreadsheet, Bank One’s incorrect
assumption in its spreadsheet also skews the principal and interest
calculations, meaning Bank One failed to prove that Wohlfahrt still owes money
on the Judgment as a matter of law.[9]  Rather,
a genuine issue of material fact exists concerning whether Wohlfahrt has paid
off the Judgment.  As such, neither party
is entitled to summary judgment on the issue of payment.[10]

Given our holding that the trial court
improperly granted partial summary judgment to Wohlfahrt on the ground that he
had paid off the Judgment, we reverse the jury’s finding with respect to
Wohlfahrt’s wrongful garnishment counterclaim because the basis for that claim
rests in part on the underlying issue of payment, which we have held Wohlfahrt
did not conclusively establish on summary judgment.  We therefore reverse the final judgment
awarding Wohlfahrt $3,878.44 on his wrongful garnishment counterclaim and
remand the cause for further proceedings.

Conclusion

          We
hold that a genuine issue of material fact exists as to whether Wohlfahrt has
paid off the Judgment.  We therefore reverse
the judgment of the trial court and remand the cause for further proceedings.

 

 

 

                                                          Jane
Bland

                                                          Justice

 

Panel consists of Justices Taft,
Higley, and Bland.











[1] Citizens Bank Houston merged into Team Bank in
1989.  Three years later, Team Bank
merged into Bank One, Texas, N.A.  Bank
One, Texas, N.A. subsequently merged into Bank One, N.A.

 





[2] See Tex. Civ. Prac. & Rem. Code Ann. §
31.006 (Vernon 1997) (“A dormant judgment may be revived by scire facias or by
an action of debt brought not later than the second anniversary of the date
that the judgment becomes dormant.”).

 





[3] See Tex. R. Civ. P. 171.





[4] After the trial court’s plenary power expires, the
court may only correct clerical errors in the judgment.  See Tex.
R. Civ. P. 316, 329b(f); Escobar v. Escobar, 711 S.W.2d 230, 231
(Tex. 1986).

 





[5] If Bank One intended to enforce the terms of the
Settlement Agreement, it should have sued Wohlfahrt for breach of
contract.  See Mantas v. Fifth Court
of Appeals, 925 S.W.2d 656, 658–59 (Tex. 1996) (holding that proper way to
enforce settlement agreement is through breach-of-contract suit); Bayway
Servs., Inc. v. Ameri-Build Constr., L.C., 106 S.W.3d 156, 160 (Tex.
App.—Houston [1st Dist.] 2003, no pet.) (“The party seeking enforcement of the
settlement agreement must pursue a separate breach-of-contract claim, which is
subject to normal rules of pleading and proof.”).

 





[6] Although Daubert’s affidavit recites that, beginning
in September 1993, Wohlfahrt made several payments after the fifteenth of the
month, it is clear from our examination of the spreadsheet created by Daubert
to track his calculations that he based his entire analysis on the assumption
that every payment—including those Wohlfahrt made after September
1993—was made on the fifteenth of the month.

 





[7] The precise payment dates as set forth in Bank One’s spreadsheet
are as follows: September 15, 1989; October 17, 1989; November 15, 1989;
December 19, 1989; January 17, 1990; February 16, 1990; March 15, 1990; April
17, 1990; May 16, 1990; July 17, 1990; August 16, 1990; September 20, 1990;
October 12, 1990; November 15, 1990; December 15, 1990; January 17, 1991;
February 19, 1991; March 26, 1991; April 18, 1991; May 21, 1991; July 8, 1991;
August 26, 1991; October 9, 1991; December 3, 1991; December 11, 1991; January
7, 1992; February 24, 1992; March 19, 1992; April 13, 1992; May 4, 1992; May 15,
1992; June 17, 1992; July 20, 1992; August 19, 1992; September 21, 1992;
October 27, 1992; December 2, 1992; December 11, 1992; February 18, 1993; March
17, 1993; April 22, 1993; May 24, 1993; June 21, 1993; July 26, 1993; September
24, 1993; November 29, 1993; and January 10, 1994.

 





[8] According to Bank One’s records, check number 3466,
dated November 8, 1991, was returned for insufficient funds.

 





[9] We note that Bank One provided, as part of its summary
judgment evidence before the trial court, a second spreadsheet omitting the
$10,007.11 in attorney’s fees and still concluding that Wohlfahrt owed money on
the Judgment as of January 10, 1994. 
Daubert’s affidavit, however, states that at least four payments made by
Wohlfahrt, which are reflected in his bank statements as check numbers 2313,
2414, 2428, and 2443, are not credited on either of Bank One’s
spreadsheets.  Viewing this evidence in a
light favorable to Wohlfahrt, even taking into consideration Bank One’s
additional spreadsheet, a fact issue remains regarding whether Wohlfahrt has
paid off the Judgment.

 





[10] Bank One asks that we reverse the trial court’s order allowing
Wohlfahrt to withdraw from the registry of the court both the $37,000 his wife
had deposited, as well as the garnished funds. 
Given our disposition of the cross-motions for summary judgment, we hold
that this issue is better left for the trial court’s determination.