**AFFIRM; and Opinion Filed August 11, 2015.**



In The

# Court of Appeals
# Fifth District of Texas at Dallas

**No. 05-14-00702-CV**

**H. ROBERT ROSE AND GAYNELL ROSE, Appellants**
**V.**
**NICHOLAS AND DORIS BONVINO, Appellees**

**On Appeal from the 199th Judicial District Court**
**Collin County, Texas**
**Trial Court Cause No. 199-2450-06**

## MEMORANDUM OPINION

Before Justices Bridges, Lang, and Schenck
Opinion by Justice Schenck

The trial court found that appellants H. Robert Rose and Gaynell Rose built a fence on their property in violation of a permanent injunction, and granted the motion of appellees Nicholas and Doris Bonvino to enforce the injunction. We affirm the trial court's order. Because the issues are settled in law, we issue this memorandum opinion. TEX. R. APP. P. 47.4.

### BACKGROUND

The parties are owners of adjoining property whose homes overlook a golf course. The Roses built a fence that blocked the view from the Bonvinos' home. The ensuing legal dispute has lasted almost a decade.

In 2007, the trial court rendered judgment against the Roses after a bench trial. The judgment provides in relevant part that the court:

> ORDERS that the Roses, within thirty (30) days of the date this Final Judgment is signed, reduce the height of their fence along the golf course (*i.e.*, the approximately thirty three (33) linear feet of wood fencing along the southerly boundary of 5418 Harbor Town and the northerly boundary of the triangular protrusion from 5414 Harbor Town) to comply with the six (6) foot maximum height limitation for fencing, walls, and hedges set forth in paragraph 6 of the Covenants and Restrictions on and for Bent Tree North—Phase One recorded in Volume 1146, Page 215 of the real property records of Collin County, Texas, in the manner depicted in DIAGRAM 1 and PHOTOGRAPH 2 and PERMANENTLY ENJOINS the Roses, their successors-in-interest, and all persons acting in concert with them, from thereafter erecting, placing, or altering any fencing, wall, or hedge in excess of six (6) feet in height without the approval of the architectural control committee of the BTN—Phase One Subdivision pursuant to the deed restrictions.

The judgment includes both a photograph and a diagram of the fence. The diagram includes an instruction to "Reduce fence to no more than 6 feet in height, Measured from unimproved grade." The photograph depicts the fence, with arrows pointing to the "unaltered and unimproved grade" and to the places where measurements should be taken. Footnote 1 of the judgment states that "The height limitations shall be measured from the unimproved and unaltered grade as it existed when the Roses initially erected the rear fence to the top of the fence."

After the trial court rendered its judgment, the Roses tore down the original fence. But in 2012, the Roses erected a new fence (the "2012 fence"). After a series of hearings, first on the Bonvinos' motion for contempt, and then on their motion to enforce the trial court's judgment, the trial court found that the 2012 fence "exceeded 6 feet in height measured from unaltered and unimproved grade," and that the Roses did not obtain approval from the architectural control committee (ACC) before constructing the 2012 fence. Based on the testimony of a member of the ACC, the trial court also found that when the Roses sought belated approval of their already-constructed 2012 fence, the ACC denied the request because:

> (a) The requested fence is outside of the [sight] line of the 5414 Harbor Town [the Roses' home], providing no benefit to the Roses;

–2–

(b) Unlike wooden side-yard fences located elsewhere, the 2012 Fence, or any wooden fence erected in that location, significantly burdens the owners of 5418 Harbor Town [the Bonvinos' home] by directly interfering with their unique golf course views and denying the owners of 5418 Harbor Town the enjoyment of their property;

(c) Such a fence constitutes "an annoyance or nuisance" prohibited by the applicable deed restrictions the terms of which are incorporated into the Final Judgment.

These findings are contained in the trial court's May 9, 2014 order granting the Bonvinos' motion to enforce the judgment, which also provides:

Based on these findings, the Court concludes that H. Robert Rose and Gaynell Rose and the 2012 Fence violates the decrees in the Final Judgment, and the Court, therefore,

ORDERS that H. Robert Rose and Gaynell Rose, within 30 days after this Order is signed, remove, or cause to be removed, the existing wooden fence erected along the southerly boundary of 5418 Harbor Town and the northerly boundary of the triangular protrusion from 5414 Harbor Town;

ORDERS that the permanent injunction in the Final Judgment shall continue in full force and effect and that, in light of the finding by the ACC and this Court that a fence in the location of the 2012 Fence constitutes a prohibited annoyance or nuisance, orders that the Roses, their successors-in-interest, and all persons acting in concert with them, are permanently enjoined from erecting, placing, or altering any fencing, wall, or hedge without the prior written approval of the architectural control committee or the Board of Directors of the BTN—Phase One Subdivision, along the southerly boundary of 5418 Harbor Town and the northerly boundary of the triangular protrusion from 5414 Harbor Town.

This appeal followed. In two issues, the Roses contend the trial court (1) abused its discretion in modifying the permanent injunction because there were no pleadings or evidence of changed conditions or circumstances to support the trial court's order requiring the Roses to obtain approval from the ACC for any fence *not* over six feet in height; and (2) erred by ordering removal of the 2012 fence because the issue was moot.

–3–

Trial courts have broad discretion in the enforcement of their judgments. *Katz v. Bianchi*, 848 S.W.2d 372, 375–76 (Tex. App.—Houston [14th Dist.] 1993, no writ). We review the trial court's order using an abuse of discretion standard. *Greiner v. Jameson*, 865 S.W.2d 493, 498 (Tex. App.—Dallas 1993, writ denied). The test for abuse of discretion is whether the court acted without reference to guiding rules and principles. *Id.* (citing *Downer v. Aquamarine Operators, Inc.*, 701 S.W.2d 238, 241–42 (Tex. 1985)).

## DISCUSSION

### 1. Scope of trial court's order

The Roses' first issue is premised on their contention that the trial court's order modified its permanent injunction without a showing of changed circumstances. The Roses do not otherwise challenge the trial court's enforcement of its judgment.

#### A. Enforcement of judgment

The trial court did not err by ordering the Roses to remove their "existing wooden fence." Even without a showing of changed circumstances, a trial court not only may, but must enforce its own judgments. *In re Crow-Billingsley Air Park, Ltd.*, 98 S.W.3d 178, 179 (Tex. 2003) (orig. proceeding); *see also* TEX. R. CIV. P. 308 (trial court "shall cause its judgments and decrees to be carried into execution"); TEX. GOV'T CODE ANN. § 21.001(a) (West 2004) ("A court has all powers necessary for the exercise of its jurisdiction and the enforcement of its lawful orders . . . ."). Indeed, the power to enforce judgments is inherent in every court with the authority to render them, and functions as a vital assurance that judicial proceedings will achieve some purpose in keeping with their aims. *Arndt v. Farris,* 633 S.W.2d 497, 499 (Tex. 1982). To that end, "'[a] trial court has the power to enforce its judgments even after its plenary power has expired.'" *Rapid Settlements, Ltd. v. Symetra Life Ins. Co.*, 234 S.W.3d 788, 795 (Tex. App.—

Tyler 2007, no pet.) (quoting *Wall St. Deli, Inc. v. Boston Old Colony Ins. Co.*, 110 S.W.3d 67, 69 (Tex. App.—Eastland 2003, no pet.)). Accordingly, the trial court here had the power to punish the Roses for contempt, although it did not do so, and the authority to otherwise enforce its original judgment by "suitable methods."[1] *Arndt,* 633 S.W.2d at 499; TEX. GOV'T CODE ANN. § 21.002 (West 2004); TEX. R. CIV. P. 692 (disobedience of injunction may be punished by court as a contempt); *see also Ex parte Gorena*, 595 S.W.2d 841, 843–44 (Tex. 1979) (power to punish for contempt is inherent power of court and essential element of judicial independence and authority). The trial court's order enforces its original judgment permanently enjoining the Roses from "erecting . . . any fencing . . . in excess of six (6) feet in height without the approval of the [ACC] . . . pursuant to the deed restrictions."

In their motion to enforce the judgment, the Bonvinos pleaded that the Roses erected fencing in excess of six feet in height without the approval of the ACC. In the series of post-judgment hearings, the Bonvinos offered evidence that the fence was in excess of six feet in height, as measured from unimproved and unaltered grade, and had been erected without the approval of the ACC. The trial court did not abuse its discretion by ordering that the fence erected in violation of the judgment be removed. *See Crow-Billingsley Air Park, Ltd.*, 98 S.W.3d at 179.

### B. Modification of judgment

The Roses contend, however, that the trial court erred by ordering that they must obtain permission of the ACC before erecting any fence, wall, or hedge, when the original injunction required permission of the ACC only for a fence, wall, or hedge in excess of six feet in height. The trial court's ruling was based on its finding that "a fence in the location of the 2012 Fence

---

[1] In the hearing on the Bonvinos' motion for contempt, the trial court orally denied the motion because "I just didn't get enough from you guys to understand what's going on," and the hearing was adjourned with instructions that the parties measure the fence and reduce its height to six feet. But the parties were unable to agree on the measurement and returned to the trial court for further hearings.

constitutes a prohibited annoyance or nuisance," supported by the evidence presented at the post-judgment hearings regarding the ACC's denial of the Roses' request to approve the fence.

In keeping with its general power to enforce its judgment by suitable methods, a "[t]rial court possess the inherent power to modify final injunctive orders to enforce a judgment or accommodate changed conditions." *Schuring v. Fosters Mill Vill. Cmty. Ass'n*, 396 S.W.3d 73, 75 (Tex. App.—Houston [14th Dist.] 2013, pet. denied); *see also City of Seagoville v. Smith*, 695 S.W.2d 288, 289 (Tex. App.—Dallas 1985, no writ) (as long as order concerns continuing situation, trial court retains power to change, alter, or modify equitable relief it granted by injunction upon showing of changed circumstances). In *City of San Antonio v. Singleton*, 858 S.W.2d 411, 412 (Tex. 1993) (per curiam), the supreme court explained:

> A trial court generally retains jurisdiction to review, open, vacate or modify a permanent injunction upon a showing of changed conditions. *Smith v. O'Neill,* 813 S.W.2d 501, 502 (Tex. 1991). The authority to exercise that jurisdiction, however, must be balanced against principles of res judicata. *See System Fed'n No. 91 v. Wright,* 364 U.S. 642, 647–48, 81 S.Ct. 368, 371, 5 L.Ed.2d 349 (1961). Whether right or wrong, an injunction "is not subject to impeachment in its application to the conditions that existed at its making." *United States v. Swift & Co.,* 286 U.S. 106, 119, 52 S.Ct. 460, 464, 76 L.Ed. 999 (1932).

In *Singleton*, because the allegedly "changed" conditions had existed at the time the injunction was rendered, modification was not warranted, and the supreme court rendered judgment setting aside the modified injunction. *Id.* And even if changed circumstances are established, a trial court may in its discretion decline to modify an injunction, as was the case in *Schuring*. *See Schuring*, 396 S.W.3d at 76.

As stated in *Singleton*, a trial court retains jurisdiction to modify or open an injunction. *Singleton*, 858 S.W.2d at 412. The exercise of this jurisdiction includes the discretion to modify an injunction to impose additional requirements on the party enjoined. *See Smith,* 695 S.W.2d at 289; *see also United States v. United Shoe Machinery Corp.*, 391 U.S. 244, 251 (1968) (district

court had both power and duty to modify injunction to impose additional restrictions on party enjoined, upon proof that original injunction had not achieved adequate relief to which party seeking modification was entitled under law). In view of finality and *res judicata* concerns, the party seeking the modification must establish that the original purposes of the injunction are not being fulfilled in a material respect that suggests modification is an appropriate method of enforcing the original judgment. *See Singleton,* 858 S.W.2d at 412; *Exxon Corp. v. Texas Motor Exch. of Houston, Inc.*, 628 F.2d 500, 503 (5th Cir. 1980) (discussing standard of proof under *United Shoe*). Here, the Bonvinos pleaded that the 2012 fence was built in violation of the injunction and despite the original judgment. The Bonvinos also offered evidence that (1) the Roses built a new fence; (2) the new fence exceeded six feet in height, contrary to the trial court's original injunction; (3) the ACC did not approve the new fence, as required by the original injunction; and (4) the ACC determined that any fence in the location of both the original fence and the 2012 fence was an "annoyance or nuisance" in violation of the applicable deed restrictions because it caused a "significant burden to the Bonvinos" and provided "no benefit that will inure to the Roses." The Bonvinos established both that circumstances had changed since the original injunction, and that the original purposes of the injunction were not being fulfilled in a material respect. *See Singleton*, 858 S.W.2d at 412; *Exxon Corp.*, 628 F.2d at 503. We reject the Roses' argument that there is no pleading and evidence to support the trial court's order.[2]

---

[2] More specifically, in both their motion for contempt and their motion to enforce, the Bonvinos pleaded that the 2012 fence had been erected in violation of the trial court's permanent injunction. And in the post-judgment hearings, the trial court heard testimony from Nicholas Bonvino that the fence was "[b]etween six-four to six-eight, depending on the slope." In addition, the trial court ordered the parties to measure the height of the fence, and the Bonvinos' counsel reported back that "what we measured on the day" was "six-two to six-five," although the parties were still in disagreement about the grade from which they were to measure. Bonvino also testified that he had contacted the ACC to inquire whether it had reviewed or approved a new fence on the Roses' property. He received a response by e-mail, admitted into evidence, that no such approval had been sought or given. The general counsel of the ACC testified that Rose did not seek permission to erect a fence until late 2013. The ACC considered the request; determined they had received no prior request from Rose; and determined not to grant Rose's request for the reasons set out in the ACC's letter admitted into evidence.

We conclude the trial court did not abuse its discretion in imposing the additional requirement on the Roses that they must obtain the approval of the ACC for any fencing, wall, or hedge, regardless of height. We overrule the Roses' first issue.

## 2. Mootness

In their second issue, the Roses contend the trial court erred by granting the Bonvinos' motion to enforce because the issue was moot. The Roses argue that the Bonvinos' attorney admitted in open court on November 14, 2013, that "the fence has been reduced to six feet in height," and therefore no issue remained to be determined. Citing *Valley Baptist Medical Center v. Gonzalez*, 33 S.W.3d 821, 822 (Tex. 2000), the Roses contend that because there was no live controversy between the parties at the time the trial court signed its order, the trial court lacked jurisdiction to order the Roses to remove the second fence.

As the record reflects, however, the parties' almost decade-long dispute over the Roses' fence is anything but moot.[3] In the same hearing, for example, the Bonvinos' attorney later argued that Rose "changed the conditions in violation of the order" by "erect[ing] a fence in excess of six feet." And even though Rose testified he used boards less than six feet long to construct the fence, the parties never agreed on the location of the "unaltered and unimproved grade" from which the height of the fence was to be measured, and there was evidence that Rose had altered the grade while constructing the fence.[4]

---

[3] Much of the argument at the November 14, 2013, hearing addressed the Bonvinos' additional request, denied by the trial court, for permission to enter the Roses' property to build a retaining wall to prevent erosion on the Bonvinos' property, and the attorney's comment was made in the context of those arguments. The Bonvinos alleged the erosion problem was caused by the removal of a "planter box" (according to the Roses) or a "retaining wall" (according to the Bonvinos) removed when the new fence was erected in 2012. The trial court explicitly refused to grant this relief, stating at more than one hearing that it believed that it lacked the authority to allow the Bonvinos to trespass on the Roses' property.

[4] The attorney's statement, in any event, was not a formal declaration in open court that was sufficiently clear, deliberate, or unequivocal so as to constitute a judicial admission. *See Horizon/CMS Healthcare Corp. v. Auld*, 34 S.W.3d 887, 905 (Tex. 2000) (judicial admission must be "a clear, deliberate, and unequivocal statement"); *see also In re Bunzl USA, Inc.*, 155 S.W.3d 202, 207 n.3 (Tex. App.—El Paso 2004, orig. proceeding) (judicial admission is "formal act, done in the course of judicial proceedings, which dispenses with the production of evidence and takes the matter out of the domain of proof").

The Bonvinos never conceded that the 2012 fence was in conformity with the trial court's original judgment. There was at least some evidence that when measured from the "unaltered and unimproved grade" as required by the trial court's original judgment, the 2012 fence exceeded six feet in height. The controversy was, therefore, not moot. We overrule the Roses' second issue.

## CONCLUSION

We affirm the trial court's "Order Granting Motion to Enforce Final Judgment."


/David J. Schenck/
DAVID J. SCHENCK
JUSTICE

140702F.P05



## Court of Appeals
## Fifth District of Texas at Dallas

# JUDGMENT

H. ROBERT ROSE AND GAYNELL
ROSE, Appellants

No. 05-14-00702-CV     V.

NICHOLAS AND DORIS BONVINO,
Appellees

On Appeal from the 199th Judicial District
Court, Collin County, Texas
Trial Court Cause No. 199-2450-06.
Opinion delivered by Justice Schenck,
Justices Bridges and Lang participating.

In accordance with this Court's opinion of this date, the judgment of the trial court is
**AFFIRMED**.

It is **ORDERED** that appellees Nicholas and Doris Bonvino recover their costs of this
appeal and the full amount of the trial court's judgment from appellants H. Robert Rose and
Gaynell Rose and from the cash deposit in lieu of cost bond. After all costs have been paid, the
clerk of the Collin County District Court is directed to release the balance, if any, of the cash
deposit to H. R. Rose.

Judgment entered this 11th day of August, 2015.