Jerold B. KATZ, GC Financial Corp., GC Services Limited Partnership, DLS Enterprises, Inc., Relators,

v.

The Honorable Richard P. BIANCHI, Judge of the 333rd Judicial District Court, Harris County, Texas, Respondent,

Jack T. Trotter, William A. Inglehart, Larry I. Fradkin, Real Parties in Interest.

No. C14–92–01026–CV.

Court of Appeals of Texas, Houston (14th Dist.).

Feb. 25, 1993.

W. James Kronzer, Richard B. Miller, Houston, for relators.

Hayden Burns, John B. Holstead, Kenneth R. Wynne, Houston, for respondent.

Before DRAUGHN, ROBERTSON and JUNELL, JJ.

OPINION

DRAUGHN, Justice.

Relator petitions this court to issue a writ of mandamus ordering Respondent, Judge Richard Bianchi, to rescind and vacate his order of September 15, 1992. That order required relators to pay interim fees in the amount of $200,000 to Jack T. Trot-

ter for services rendered as Special Master in charge of selling an enterprise owned by relators, William Inglehart (Inglehart) and Larry Fradkin (Fradkin). Relators contend that the order is void because it materially alters and is inconsistent with the two agreed judgments signed by the parties on October 13, and October 16, 1989, which govern the sale of the business and payment to Trotter. We disagree and deny mandamus.

Relator Jerold B. Katz is the majority shareholder in a group of companies in which Inglehart and Fradkin have minority interests. A dispute regarding the companies arose among the parties, and as a result, Fradkin and Inglehart filed suit against Katz and the companies to dissolve the GC Services Limited Partnership ("GCLP") through sale of the business. Inglehart and Fradkin also sought distribution of the proceeds to the shareholders in the event of such sale. In October 1989, the trial court entered the two agreed judgments mentioned above. Those judgments purported to settle the disputes between the parties, and named Trotter as a Special Master to effectuate the sale of the business in question. The judgments provided for "a reasonable fee" to be paid to Trotter "to be agreed upon by the counsel for the Consenting Parties," and set out specific duties and powers with regard to Trotter to enable him to effectively accomplish the sale of GCLP.

The agreed judgments also ordered all consenting parties to cooperate with Trotter to the extent necessary to achieve the purposes of the judgments. In addition, the judgments stated that the trial court retained jurisdiction of the cause to ensure the implementation of the agreed judgments, and to ensure good faith and fair dealing among the parties in effectuating the purpose of the judgments and the operation of the business pending its sale.

In April 1992, a hearing was held concerning, among other matters, payment of an interim fee to Trotter. The trial court specifically reserved a decision on this issue until counsel for each of the consenting parties had an opportunity to discuss and attempt to reach an agreement on the matter. No agreement was reached. Subsequently, on August 28, 1992, another hearing regarding the payment of interim compensation was held. At that hearing, the trial court heard argument and evidence from all parties. Evidence was offered illustrating that Trotter had spent a major portion of each day since his appointment as Special Master dealing with the sale of the business. At the time of the hearing, Trotter had been Special Master in these proceedings for almost three years without having received any compensation for his services. Trotter also testified about relators' resistance and failure to cooperate with Trotter in the performance of his necessary duties of monitoring and carrying out certain aspects of the business in connection with the ultimate sale. Trotter stated that he had been "frustrated" by relators in every way. At the conclusion of the hearing, the trial judge ordered relators to pay Trotter an interim fee in two installments: $100,000.00 on or before October 1, 1992, and $100,000.00 on or before January 15, 1993. It is from this order that Relators seek mandamus relief. They contend the respondent clearly abused his discretion in ordering such interim fee payments, because he had absolutely no authority to do so under the terms of the agreed judgments. For the reasons hereinafter set out, we find he did have such discretionary authority under the concerned judgments.

 Mandamus may issue to correct a "clear abuse of discretion" by the trial court. *Walker v. Packer*, 827 S.W.2d 833 (Tex.1992). Such an abuse of discretion occurs when a trial court reaches a decision so arbitrary and unreasonable as to amount to a clear and prejudicial error of law. *Johnson v. Fourth Court of Appeals*, 700 S.W.2d 916 (Tex.1985). Thus, the determinative issue in this proceeding is whether respondent had the authority to order the payment of interim fees under these agreed judgments.

The two agreed judgments at issue in this case are very similar, but not identical. Both attempt to provide for compensation to Trotter for his services and efforts at

selling and operating the company. Specifically, the Fradkin agreed judgment states: Trotter is "To be paid a reasonable fee by GCLP, to be agreed upon by the counsel for the consenting parties." The Inglehart judgment states: "For his services, Trotter shall be paid a reasonable fee by GCLP, to be agreed upon by the counsel for the consenting parties."

Relators argue that the language "*a reasonable fee*" literally means that Trotter may only be paid a sum in one single payment at the successful conclusion of the sale of the business, that sum only to be paid upon agreement by all the parties. If this interpretation is correct, the trial court clearly abused his discretion in ordering the payment of the interim fees to Trotter. After a careful review of the agreed judgments and the respondent's authority in relation to them, we reach a different conclusion.

■ The trial court is vested with explicit statutory authority to enforce its judgments, TEX.R.CIV.P. 308, as well as inherent judicial authority to enforce its orders and decrees. *Arndt v. Farris*, 633 S.W.2d 497, 499 (Tex.1982); *Eichelberger v. Eichelberger*, 582 S.W.2d 395, 398 (Tex.1979). The only limit on this authority is that enforcement orders may not be inconsistent with the original judgment and must not constitute a material change in substantial adjudicated portions of the judgment. *Harris County Appraisal Dist. v. West*, 708 S.W.2d 893, 896 (Tex.App.—Houston [14th Dist.] 1986, orig. proceeding). A post-judgment enforcement order may properly require performance of the obligations imposed by the final judgment. *Wagner v. Warnasch*, 156 Tex. 334, 295 S.W.2d 890, 892 (1956).

In the present case, Trotter offered evidence at the August 28th hearing that relators had repeatedly resisted his efforts to carry out his duties in connection with the sale and operation of the business as set out in the agreed judgments. There was also evidence that Trotter had been forced to turn to the court several times to obtain from relators financial records and other information necessary to perform his duties. At the time of the hearing on the interim fee, Trotter had been working on selling the business for approximately three years. He received no compensation for his services during any of this period. The trial judge was not required to make any great inductive leap to conclude that Relator Katz may have contributed to this delay unnecessarily by his tactics.

In light of the evidence before him, respondent apparently found that relator was purposefully opposing Trotter's attempts to carry out the sale of the business. As a result, respondent was confronted with a challenge as to his authority to enforce the agreed judgments. Respondent's retained jurisdiction in the agreed judgments was grounded in his power to ensure good faith and fair dealing among the parties in carrying out the ultimate purpose of the judgments: the sale of the business by the Special Master. To carry out this mandate to ensure good faith and fair dealing in achieving the purpose of the judgments, he apparently concluded that under the circumstances, Trotter was entitled to interim fees because the length of the interim between Trotter's required work and the final objective of the judgments was being unnecessarily extended by relator's tactics. He apparently also concluded that "money talks," and the interim fees, by their very nature, would also contribute to furthering the action in completing the purpose of the judgments. He obviously concluded that nothing in the agreed judgments specifically precluded the payment of interim fees to the Special Master. We find that it was within his discretion to order such payments under the circumstances and under his retained jurisdiction in the agreed judgments to ensure good faith and fair dealing between the parties toward accomplishing the final purpose of the judgments.

The payment of interim fees is not inconsistent with the agreed judgments. Nowhere do the judgments require that Trotter's fee be paid in one single payment. And for us to engraft such a term onto the judgments by implication would unrealistically limit the inherent authority of the trial court to enforce the judgments and to

ensure good faith and fair dealing toward that end. It may be true, as relators argue, that the parties did not contemplate an interim fee, but that is beside the point. It is also unlikely that the parties, at the time of the agreed judgments, contemplated that the Special Master would be unduly delayed by relator's subsequent actions. As an appellate court, we are limited to the provisions set out in the judgments, and the reasonable interpretations drawn therefrom. Nothing in the judgments precludes such interim fees, or provides that the Special Master is to be paid only one total fee at the conclusion of the sale. It is clear that the parties, with some foresight, did contemplate and include in the agreed judgments jurisdiction to be retained by the judge to enforce the judgment by ensuring good faith and fair dealing between the parties in carrying out the purpose of the judgments. For us to engraft an implied one time, total fee payment on to the judgments would allow one of the parties to delay and frustrate the Special Master in carrying out his duties. This, in effect, would largely circumvent the good faith and fair dealing mandate imposed by the judgments on the trial judge. Against such gridlock, the trial judge, who has given his imprimatur to these agreed judgments, would, under relator's interpretation, be rendered judicially impotent and powerless to enforce the judgments. For us to foster such judicial impotence under these judgments is unrealistic. That we will not do. We find it is more realistic and in keeping with the purposes stated in the agreed judgments to hold that the judge has the inherent power to order such interim payments, (1) because such payments are not specifically precluded and (2) to insure good faith and fair dealing between the parties as provided in the judgments.

Clearly, Trotter's request for the interim payment was not a plea for payment *in addition to* the reasonable fee provided in the judgment, but merely a partial payment of that fee. The first line of Trotter's "Master's Application for Partial Interim Payment of Fee" contains the language *"partial payment of his fee."* Indeed, the title of that request states that he is asking for only a portion of his fee, and not a "bonus" in excess of the fee he was to be paid. Respondent heard testimony as to Trotter's skill and reputation in his profession, and found $200,00.00 to be a reasonable compensation for the three years of service he had rendered up to that point. In light of the language in both judgments and the request for interim payment under these circumstances, we cannot find that respondent clearly abused his discretion in ordering relators to pay a partial fee.

■ Relators counter that the order is also void because the judgments specifically require the agreement of all the parties' counsel on the amount of Trotter's fee. However, as previously stated, such an interpretation of the agreements is unrealistic. The court gave the parties an opportunity to agree on an interim fee, and they could, or would, not. If the court is powerless under these circumstances to order a reasonable interim fee, then, as previously stated, any one party could refuse to agree on a sum certain to be paid, and Trotter potentially would not be compensated, even upon the successful completion of the sale and distribution of the business. To allow such an unresolved impasse, would paralyze the judgments. Trial courts must have some power to enforce settlements and other judgments, or else such judgments would be hollow, without any real substance or meaning. A "judgment" would, in effect, only be a piece of paper whose viability would be subject to interminable delay at the whim of one party.

Trial courts have broad discretion in the enforcement of their judgments, and we find no reason not to apply that principle of law to respondent's discretionary order aimed at enforcing these agreed judgments which he signed and entered. Judge Bianchi's order for interim fees to the Special Master was not inconsistent with the provisions of the agreed judgments and it did not materially change the substantive provisions in the judgments. Finally, it was consistent with his authority contained in the judgments to ensure good faith and fair dealings between the parties to carry out the ultimate purpose of the judgments.

Accordingly, we find no abuse of discretion by the respondent in issuing his order for interim fees.

We, therefore, set aside our order of September 24, 1992, which stayed the trial court's order of September 15, 1992, granting the payment of interim fees to Trotter, and deny the mandamus relief requested.

The petition for mandamus is

DENIED.