Petition for Writ of Mandamus Denied and Opinion filed February 21, 2008








Petition for
Writ of Mandamus Denied and
Opinion filed February 21, 2008.

 

In The

 

Fourteenth Court of
Appeals

____________

 

NO. 14-07-00402-CV

____________

 

IN RE AKIN GUMP STRAUSS HAUER &
FELD, LLP; THE ROBINSON LAW FIRM; WILLIAMS, BIRNBERG & ANDERSEN, L.L.P.;
MICHAEL MADIGAN; MICHAEL J. MUELLER; KENNETH M. ROBINSON; AND GERALD M.
BIRNBERG,
Relators

 



 

ORIGINAL PROCEEDING

WRIT OF MANDAMUS

 



 

O P I N I O N








This original proceeding arises out of a long-running fee
dispute between a biotechnology company and the lawyers who represented the
company in intellectual-property litigation.  The trial court below confirmed
an arbitration award in favor of the lawyers and rendered a final judgment thereon.  More than seven
years later, the lawyers asked the trial court for a remand to the original
arbitration panel to resolve disputes regarding the meaning of the panel=s arbitration award.  The trial court
denied the motion and also denied a motion to reconsider and to compel
arbitration of these disputes before the original panel.  Presuming, without
deciding, that such disputes can ever be remanded to the original arbitration
panel after a trial court has confirmed the award and rendered final judgment
thereon, we conclude that the trial court did not clearly abuse its discretion
by denying the lawyers= motions.  Accordingly, we deny the lawyers= petition for a writ of mandamus.

                        I.  Factual and Procedural Background

Beginning in 1994, relators Akin Gump Strauss Hauer &
Feld LLP, The Robinson Law Firm, Williams Birnberg & Andersen, L.L.P.,
Michael Madigan, Michael J. Mueller, Kenneth M. Robinson, and Gerald M.
Birnberg (collectively hereinafter the ALawyers@) represented real party in interest
Tanox Biosystems, Inc. as plaintiff in certain litigation based on Tanox=s claims against Genentech, Inc. and
other companies based on Genentech, Inc.=s alleged violation of a
confidentiality agreement and misappropriation of Tanox=s trade secrets (hereinafter, ATrade Secret Claims@).[1] 
The Lawyers and Tanox executed a contingency fee agreement (the AFee Agreement@) under which the Lawyers would be
compensated only out of any recovery Tanox obtained as a result of the
litigation.[2]  Tanox agreed
to pay the Lawyers a contingent fee calculated on a sliding scale:  25% of the
first $32 million recovered on behalf of Tanox, 33 1/3% of the recovery from
$32 million to $60 million, 40% of the recovery from $60 million to $200
million, and 25% of the recovery over $200 million.   Tanox agreed that, in the event the
case was settled (whether before, during, or after trial), the first $8 million
of recovery would be paid to the Lawyers, Aregardless of
whether the total recovery amounts to or is less than $32 million.@








Under the Fee Agreement, the amount recovered on behalf of
Tanox that was subject to the above percentages, included, but was not limited
to the following:

(i) all cash, monies, or
substantial equivalent recovered by Tanox as a result of the litigation, plus
(ii) the economic value to Tanox of all tangible property (real, personal, or
mixed) obtained for Tanox as a result of the litigation . . . plus (iii) all
future payments (such as, by way of example, licensing fees, royalties, and
similar future payments) Tanox becomes entitled to receive as a result of the
litigation; provided, however, that with respect to royalties or similar future
payments received from defendants, Tanox will pay the [Lawyers] 10% of any such
amounts, to be paid . . . until such time as the Acontingent fee@ has been paid in
full or the Alimitations on contingent fee@ [no more Acontingent fee@ as to royalties
after aggregate Acontingent fee@ for all
categories reaches $300 million and total contingent fee cannot exceed $500
million in the aggregate] have been reached.

The Fee Agreement also reflected the parties= recognition that
the Trade Secret Claims might be resolved by a Anew business
arrangement@ between Tanox and one or more of the companies
against which Tanox had asserted the Trade Secret Claims.  Tanox agreed that,
in the event of settlement in the form of a new business arrangement, the
Lawyers also would receive the percentage contingent fees based on A[a]ny cash, money,
or substantial equivalent, any tangible property, and any future payments (such
as licensing fees, royalties, income from third parties with respect to
defendants= intellectual property, and similar future payments)
received by Tanox as a result of the litigation, on account of such new
business arrangement. . . .@ 








In 1996, Tanox and Genentech, Inc. (hereinafter AGenentech@) agreed to settle
the litigation.  Terms of the settlement included a $16 million cash payment
from Genentech to Tanox and a new business arrangement between Tanox,
Genentech, and Ciba-Geigy, Ltd. for development of the allergy drug.  The
parties outlined the new business arrangement in a document entitled AOutline of Terms
for Settlement of the Litigations among Genentech, Inc., Genentech
International Limited, Tanox Biosystems, Inc. and Ciba-Geigy, Limited, relating
to Anti-IgE Inhibiting Monoclonal Antibodies@ (hereinafter the AOutline of Terms@).  The parties
listed in the title of this document signed the document and attached it as an
exhibit to the Settlement and Cross-Licensing Agreement.  Under the settlement,
Genentech and Ciba-Geigy agreed to pay to Tanox royalties and certain payments
tied to the achievement of milestones in the forecasted development of the
product.  

Although the parties provided in the Fee Agreement that
Tanox would not Areceive any funds relating to this matter
without first consulting with and making full disclosure to [the Lawyers],@ Tanox did not
inform the Lawyers of the $16 million payment from Genentech.  The Lawyers
learned of the settlement and the payment only after the fact, and immediately
made demand on Tanox for $8 million according to the terms of the Fee
Agreement.  After first hesitating to verify that it had received $16 million
from Genentech, Tanox then contested the Lawyers= right to either
the $8 million payment or any fees from the new business arrangement. 








 Ultimately, as called for by the Fee Agreement, Tanox and
the Lawyers submitted their fee dispute to arbitration.  Tanox claimed that the
Fee Agreement was unconscionable and/or unenforceable based on the Lawyers= alleged breach of
fiduciary duty, legal malpractice, fraudulent inducement, negligence, and the
Lawyers= unjust enrichment,
among other theories.  The Lawyers claimed that Tanox committed both a breach
and an anticipatory breach of the Fee Agreement, by failing to pay the Lawyers
the first $8 million received as a result of the litigation and by repudiating
Tanox=s obligation to
pay a percentage contingent fee on the benefits it is receiving from the new
business arrangement.  In arbitration, the Lawyers sought damages, including
the amounts of the percentage fee interests specified in the Fee Agreement on
the royalties, milestone payments, licensing fees, and fees on end-user product
sales provided for in the settlement between Tanox, Genentech, and Ciba-Geigy. 
In their live pleading in the arbitration, the Lawyers also requested a
declaratory judgment that the Lawyers have a contingent fee interest, as
specified in the Fee Agreement, in Aall consideration
of every kind and description which Tanox has received or will receive pursuant
to the settlement agreement (including, without limitation, the $16 million up
front cash payment, all milestone payments, and all royalties) including,
without limitation, all such consideration that has been paid or will be paid
to Tanox under . . . the Outline of Terms, the Settlement and Cross-Licensing
Agreement, the Settlement and Participation Agreement, the Definitive
Agreement, and/or any other agreement related to the anti-IgE program,
patents, trade secrets, or other intellectual property.@[3]  

After receiving evidence over the course of thirty-four
days, including testimony from eighteen witnesses and approximately four
hundred exhibits, and after considering more than one thousand pages of
briefing and evidentiary references as well as three days of argument from
counsel, a three-member arbitration panel issued its unanimous, sixteen-page,
reasoned award (the AAward@).  The panel
found that the Fee Agreement was the result of a very lengthy negotiation
process and was valid and enforceable, despite Tanox=s various
defenses, including procedural and substantive unconscionability.  The panel
found that the Settlement and Cross-Licensing Agreement and the Outline of
Terms qualify under the Fee Agreement as Aa new business
arrangement@ that came about Aas a result of
litigation.@  The panel further found as follows:

The Lawyers
are therefore entitled to receive a percentage contingent fee in any cash,
money, or substantial equivalent, any tangible property, and any future
payments such as licensing fees, royalties, income from third parties with
respect to defendants= intellectual property, and similar payments received
by Tanox pursuant to the new business arrangement reflected in  the Settlement and Cross-Licensing
Agreement and the Outline of Terms.  

(This
paragraph is collectively referred to in this opinion as the APage 7 Language@).








The panel found that Tanox had breached and anticipatorily
breached the Fee Agreement and that the Lawyers were entitled to contract
damages and attorney=s fees.  Additionally, the panel found
against Tanox on all of its claims against the Lawyers.  In section V. of the
Award, entitled AAward as to Lawyers= Claims,@ the panel stated
that Tanox shall pay the Lawyers the following for the Lawyers= claims:

!       The unpaid balance due on the initial $8
million portion of the fee,[4]
plus pre-judgment interest;

!       Reasonable attorney=s fees and expenses for the Lawyers= prosecution of their fee claim;

!       Amounts seeking to apply the sliding-scale,
contingent-fee percentages to milestone payments as they may become due in the
future under the settlement documents;

!       Ten percent of any royalties received by
Tanox from Genentech, Genentech International Limited, Ciba-Geigy, Novartis
Group, or various other companies on
account of the sales of any Anti-IgE Antibody product, including without
limitation any royalties paid or received under the Settlement and Cross-Licensing
Agreement,  the Outline of Terms, the
Definitive Agreement to be executed pursuant to the terms of the Outline of
Terms, and any modifications, revisions, substitutions, or other changes
thereof.  The total amount of all these payments based on receipt of royalties
shall not exceed $300 million.

(This
paragraph is collectively referred to in this opinion as the ARoyalty Language@).








Finally,
the Award provided, AThis Award is in full settlement of all
claims and counterclaims submitted to this Arbitration as against the named
parties.  All such claims not expressly granted herein are hereby denied.@  One of the
claims that was not expressly granted in the Award was the Lawyers= request for a
declaratory judgment that the Lawyers have a contingent fee interest, as
specified in the Fee Agreement, in Aall consideration
of every kind and description which Tanox has received or will receive pursuant
to . . . the  Definitive Agreement, and/or any other agreement related to the
anti-IgE program, patents, trade secrets, or other intellectual property.@

In the
trial court below, the Lawyers moved for confirmation of the Award, while Tanox
filed an application to vacate the Award.  No party asked the trial court to
modify the Award or to remand to the arbitration panel to clarify the Award
before confirmation.  The trial court granted the Lawyers= motion to confirm and rendered a
final judgment on the Award (the AJudgment@).  In the Judgment, the trial court
stated that it confirmed the Award Ain its entirety,@ and that a copy of the Award was
attached to the Judgment, although no such copy was apparently attached to the
Judgment.  The trial court rendered a judgment that Tanox take nothing on its
claims and that the Lawyers recover all of the items listed by the panel in section V. of the
Award.  The trial court did not make any declaratory judgment containing the
Page 7 Language.  The court below rendered the Judgment on March 28, 2000, and
this court affirmed that judgment.  Tanox, Inc. v. Akin, Gump, Strauss,
Hauer & Feld, L.L.P., 105 S.W.3d 244, 248 (Tex. App.CHouston [14th
Dist.] 2003, pet. denied).  The Supreme Court of Texas denied review, and, in
2004, the Judgment became final by appeal.  See id.

In 2003, the Food and Drug Administration approved the
Anti-IgE Antibody, which
is being marketed under the name Xolair, for persons with a certain type of
asthma.  The Outline of Terms reflected the parties= understanding that they would enter
into a further and more detailed agreement.  Tanox, Genentech, and Novartis
executed a document entitled Tripartite Cooperation Agreement dated as of
February 25, 2004 (the ATripartite Agreement@).  As of the same
date, Tanox and Novartis entered into an Amended and Restated Development and
Licensing Agreement (AAmended Development Agreement@).  The Lawyers
asserted that, under the Award, they are entitled to payments based on three
matters relating to these agreementsCthe Royalty Issue,
the Manufacturing Rights Issue, and the Debt Forgiveness Issue, terms defined
and discussed below.  Tanox disagreed.  








In February 2007, the Lawyers filed a AMotion For Remand
to the Arbitration Panel.@  Tanox responded in opposition and also
moved to enforce the Judgment.  The Lawyers asserted the following in their motion and at oral
argument thereon:

!         Under the language of the Award, the arbitration panel granted
the Lawyers a fee interest in various payments made by third parties to Tanox
regarding three different matters.  Tanox has refused to pay these amounts to
the Lawyers.  Therefore, the language of the Award has generated collateral
disputes in these regards, and the trial court is required to remand the case
to the original arbitration panel to resolve these disputes as to whether the
panel awarded these interests to the Lawyers in the Award.  

!         In its Award, the arbitration panel concluded that the Lawyers
should receive their entire contingency fee as set forth in the Fee Agreement. 

!         Under the Page 7 Language of the Award, the arbitration panel 
provided that the Lawyers are entitled to a fee on payments that Tanox receives
in the new business arrangement involving Genentech and Novartis.  The
arbitration panel is in the best position to resolve disputes as to the meaning
of the language in the Award.  

!         Under the Royalty Language of the Award, the arbitration
panel  provided that Tanox must pay the Lawyers ten percent of all royalties
that Tanox receives from the sales of Anti-IgE Antibody
products.  Under the Tripartite Agreement, Novartis must pay Tanox twenty
percent of Net Profit from the sales of Anti-IgE Antibody
Products in the United States.  These payments are allegedly royalties under
the Royalty Language so that the Lawyers are entitled to ten percent of these
payments.  Even though Novartis began making these payments to Tanox in 2005,
Tanox refuses to pay the Lawyers any part of these payments, apparently because
Tanox claims they are not royalties.  Even if these payments are not royalties,
they allegedly still would be Afuture payments@ within the scope of the Page 7 Language of the Award,
and therefore, Tanox would have to pay the Lawyers forty percent of these
payments.[5]








!         Under the Tripartite Agreement, Tanox receives payment from
Genentech and Novartis for every unit of Xolair these companies manufacture. 
In the third quarter of 2006, Tanox received $2.6 million in such payments. 
These payments are allegedly Afuture payments@ received under the new business arrangement within
the scope of the Page 7 Language.  Therefore, Tanox allegedly must pay the
Lawyers forty percent of these payments.[6]

!         Under the Amended Development Agreement, Novartis forgave a
$10 million loan from Novartis to Tanox. This debt forgiveness is allegedly the Asubstantial equivalent@ of a cash payment received by
Tanox under the new business arrangement within the scope of the Page 7
Language.  Therefore, Tanox allegedly must pay the Lawyers forty percent of
this debt forgiveness.[7]


Tanox asserted the following in its response, motion to
enforce, and oral argument:

!         Under the clear and unambiguous language of the Award, the
arbitration panel awarded only the relief specified in sections V. through
VIII. of the Award, and the panel did not award any relief to the Lawyers under
the Page 7 Language.  

!         The Lawyers then had the trial court confirm the Award and
convert it into a final and enforceable Texas judgment.  In the Judgment, the
trial court clearly and unambiguously stated the specific relief to which  it
concluded the Lawyers were entitled, and it unambiguously stated that it denied
all relief not specifically granted in the Judgment.  The trial court did not
specifically grant any relief contained in the Page 7 Language, which is not
contained in the Judgment.  The Judgment is now final. 

!         In the arbitration proceeding, the Lawyers asserted they were
entitled to a fee interest based on the value of the new business relationship
involving Tanox, Genentech, and Novartis.  Tanox argued that, if the panel
determined that this fee attached to this entire relationship, then the fee
would be unreasonable and void.  

!         The parties arbitrated all aspects of the fee dispute.  In the
Award, the panel granted the Lawyers certain relief, but the panel did not make
the broad declaration that the Lawyers had requested in their live pleading in
the arbitration.  








!         Under Texas law, including
section 171.092 of the Texas Civil Practice and Remedies Code,[8]
only the trial court can enforce the Judgment, including determining any issues
of how to interpret the Judgment that might arise relating to the enforcement
of the Judgment.  Even if a post-confirmation remand were ever appropriate, it
would not be appropriate in this case because the Judgment and the Award are
unambiguous.[9]








The trial court denied the Lawyers= motion for
remand.  The Lawyers filed a motion for reconsideration of the order denying remand and a
motion to compel further arbitration.  In the reconsideration motion, the
Lawyers asserted, among other things, that (1) to the extent section 171.092
precludes a remand to the arbitration panel following confirmation of the
award, this statute conflicts with and is preempted by the Federal Arbitration
Act (AFederal Act@), which purportedly allows such
remands; (2) when enforcement of an arbitration award is ministerial, then the
trial court can enforce the award without guidance from the arbitration panel,
but if the arbitration award requires interpretation before it can be enforced,
then the issues requiring interpretation must be sent back to the original
arbitration panel; and (3) there is no meaningful distinction between section
171.092 and section 13 of the Federal Act.  In their motion to compel further
arbitration, the Lawyers sought to compel arbitration of the three issues
regarding the Award before the original arbitration panel under the Federal
Act.[10]  The trial
court denied both motions, stating in its order, AThis Court has the authority to
enforce its own final judgment and, in doing so, the authority to decide the
issues in dispute.@  The Lawyers now petition this court for a writ of mandamus
compelling the trial court (1) to vacate its orders denying remand to the
arbitrators and further arbitration and (2) to sign an order granting remand or
compelling further arbitration.

II.  Standard of Review

To show
themselves entitled to mandamus relief, the Lawyers must show, among other
things, that the trial court clearly abused its discretion by denying their AMotion For Remand to the Arbitration
Panel@ or by denying their AMotion For Reconsideration of Order
Denying Motion for Remand and Motion to Compel Further Arbitration.@ See In re Prudential Ins. Co. of
America, 148 S.W.3d 124, 135 (Tex. 2004).  On mandamus review of factual
issues, a trial court will be held to have abused its discretion only if the
party requesting mandamus relief establishes that the trial court could have
reached but one decision (and not the decision it made).  Johnson v. Fourth
Court of Appeals, 700 S.W.2d 916, 197 (Tex. 1985).  Mandamus review of issues of law is
less deferential.  A trial court abuses its discretion if it clearly fails to
analyze the law correctly or apply the law to the facts.  In re Cerberus
Capital Mgmt., L.P., 164 S.W.3d 379, 382 (Tex. 2005).

We review the trial court=s interpretation
of applicable statutes de novo.  See Johnson v. City of Fort Worth, 774
S.W.2d 653, 655B56 (Tex. 1989).  In construing a statute,
our objective is to determine and give effect to the Legislature=s intent.  See
Nat=l Liab. & Fire Ins. Co. v. Allen, 15 S.W.3d 525,
527 (Tex. 2000).  If possible, we must ascertain that intent from the language
the Legislature used in the statute and not look to extraneous matters for an
intent the statute does not state. Id. If the meaning of the statutory
language is unambiguous, we adopt the interpretation supported by the plain
meaning of the provision=s words.  St. Luke=s Episcopal Hosp.
v. Agbor, 952 S.W.2d 503, 505 (Tex. 1997).  We must not engage in forced or
strained construction; instead, we must yield to the plain sense of the words
the Legislature chose.  See id.

                                           III.  Issues Presented

In their petition, the Lawyers assert the following issues:








(1)     Cases under the Federal Act are clear: When
an arbitration award requires interpretation before it can be enforced, the
proper course is  a remand for clarification to the original arbitration
panel.  Did the trial court abuse its discretion in denying the Lawyers= motion for remand to the original
arbitration panel to resolve a disagreement between the Lawyers and Tanox over
the correct interpretation of the panel=s award?

(2)     The Fee Agreement contains a broad
arbitration clause. That agreement and the law of the case conclusively
establish that the parties= present fee disputes are arbitrable.  Did the trial court abuse its
discretion in refusing to compel arbitration?

(3)     Are the
Lawyers without an adequate remedy at law?

                                                   IV. 
Analysis

A.      Does the
Federal Arbitration Act apply to the arbitration agreement contained in the
parties= contingency fee agreement?

The Federal Act applies to an arbitration agreement in any
contract involving interstate commerce, to the full extent of the Commerce
Clause of the United States Constitution.  See 9 U. S. C. ' 2 (1999); Allied-Bruce
Terminix Co. v. Dobson, 513 U.S. 265, 277B81, 115 S. Ct.
834, 839B41, 130 L. Ed. 2d
753 (1995); In re L&L Kempwood Assocs., 9 S.W.3d 125, 127 (Tex.
2006).  The Fee Agreement is a contract involving interstate commerce, and
therefore, the Federal Act applies to the arbitration agreement between the
Lawyers and Tanox.  Nonetheless, by enacting the Federal Act, Congress did not
occupy the entire field of arbitration regulation, and the Federal Act
pre-empts state arbitration law only to the extent that the state law actually
conflicts with the Federal Act.  See Volt Info. Scis., Inc. v. Bd. of
Trs. of Leland Stanford Junior Univ., 489 U.S. 468, 477, 109 S. Ct. 1248,
1255,  103 L. Ed. 2d 488 (1989); In re D. Wilson Constr. Co., 196 S.W.3d
774, 789B90 (Tex. 2006). 
Therefore, the Texas Arbitration Act (ATexas Act@) applies to the
parties= arbitration
agreement as well, except to the extent that it actually conflicts with the
Federal Act.  








B.      Are there potential problems if  a trial court can
remand issues to the arbitration panel after the court has confirmed the
arbitration award and rendered final judgment thereon?








The Federal Act contains no provision that allows a trial court
to remand a case to the arbitration panel after the panel issues an award.  The
Texas Act provides that an arbitration panel may clarify its prior award.  See
Tex. Civ. Prac. & Rem. Code Ann.
' 171.054(a)(2)
(Vernon 2005); Daniewicz v. Thermo Instrument Sys., Inc., 992 S.W.2d
713, 716B17 (Tex. App.CAustin 1999, pet.
denied) (affirming trial court=s enforcement of arbitration panel=s pre-confirmation
clarification order under section 171.054).  This clarification may be made
only (1) on application of a party to the arbitration panel within twenty days
of the day on which the party receives the arbitration award or (2) by
submission of the clarification issues to the panel by a trial court before
which is pending a motion to confirm, vacate, modify, or correct an award under
sections 171.087, 171.088. 171.089, or 171.091.[11] 
See Tex. Civ. Prac. & Rem.
Code Ann. '' 171.054, 171.087, 171.088, 171.089,
171.091 (Vernon 2005).      When a trial court  renders judgment on an
arbitration award, the Federal Act provides that the court=s judgment Ashall have the
same force and effect, in all respects, as, and be subject to all the
provisions of law relating to, a judgment in an action; and it may be enforced
as if it had been rendered in an action in the court in which it is entered.@  9 U.S.C. ' 13 (1999)
(emphasis added).  The Texas Act contains a substantially similar provision.[12] 
See Tex. Civ. Prac. & Rem.
Code Ann. ' 171.092 (Vernon 2005).  Therefore, while
a pre-confirmation remand to the arbitration panel can help to clarify various
issues regarding the arbitration award, post-confirmation remands appear to
violate the legislative mandate that judgments on arbitration awards should
have the same effect and be subject to the same law as any other judgment of
that court.[13] 
See Hamm v. Millenium Income Fund, L.L.C., 178 S.W.3d 256, 262B64 (Tex. App.CHouston [1st
Dist.] 2005, pet. denied) (holding that motion to vacate arbitration award
cannot be asserted after trial court has confirmed arbitration award, in part
because that would conflict with the requirement of section 13 of the Federal
Act and section 171.092 of the Texas Act that judgments on arbitration awards
be treated the same as other trial court judgments).  








Disputes regarding the interpretation, meaning, and
enforcement of a judgment rendered by a Texas trial court are resolved by the
presiding judge of the trial court that rendered the judgment.  See Tex. R. Civ. P. 308; Wilde v.
Murchie, 949 S.W.2d 331, 332B33 (Tex. 1997); Katz
v. Bianchi, 848 S.W.2d 372, 374 (Tex. App.CHouston [14th
Dist.] 1993, no writ).  For example, if a trial judge renders a judgment
following a lengthy bench trial and if, after that judge retires from judicial
service, disputes arise regarding the interpretation, meaning, or enforcement
of that judgment, these disputes are resolved by the presiding judge of the
trial court that rendered the judgment, even though that judge did not
personally render the judgment and even though that judge lacks the personal
knowledge of the case possessed by the retired judge who actually adjudicated
the dispute.  Likewise, if a trial court renders a declaratory judgment based
on a jury=s findings as to the mutual intent of the parties to
an ambiguous contract, subsequent disputes regarding the meaning or enforcement
of that declaratory judgment are not sent to back to the original jury for
determination.  If a trial court were to remand to the original arbitration
panel disputes regarding the meaning and enforcement of the trial court=s judgment on an
arbitration award, then that judgment would not be subject to the same law and
given the same effect as other judgments rendered by that court, contrary to
the express requirements of both the Federal Act and the Texas Act.  See
9 U.S.C. ' 13; Tex. Civ.
Prac. & Rem. Code Ann. ' 171.092.  No case
binding on this court allows a post-confirmation remand in a case governed by
the Federal Act or the Texas Act, and it is not clear that such a remand would
ever be permissible.  Nonetheless, we presume without deciding, that such a remand
is possible.

C.      Did the trial court clearly abuse its discretion by
denying the Lawyers= motion to remand
when (1) the Award was confirmed by judgment more than seven years earlier and
(2) the Lawyers have not asserted that the Award is ambiguous or incomplete?








The
Lawyers have not alleged that the Award is ambiguous[14]
or incomplete.[15]  The Lawyers
assert that in numerous cases courts have held that post-confirmation remand to
the arbitration panel was appropriate and that courts uniformly have held that,
in the situation presented in this case, remand to the arbitration panel is
required.  However, after reviewing the cases cited by the Lawyers and after
our own extensive research, we find no cases holding that remand is required in
a case under either the Federal Act or a state arbitration act in cases in
which there is no assertion that the Award is ambiguous or incomplete.  Indeed,
we have found only three cases holding that an award should be remanded to the
original arbitration panel based on ambiguity or incompleteness, after
confirmation in a case under the Federal Act or a state arbitration act.[16]  See U.S.
Energy Corp. v. Nukem, Inc., 400 F.3d 822, 834B36 (10th Cir.
2005) (holding that post-confirmation remand was necessary to clarify ambiguity
in language used in arbitration award, even though trial court already had 
confirmed award under Federal Act); Tri-State Business Machines, Inc. v.
Lanier Worldwide, Inc., 221 F.3d 1015, 1020 (7th Cir. 2000) (holding trial
court erred by not ordering post-confirmation remand to clarify ambiguity in
language used in arbitration award);  In re Nestle USA-Beverage Division,
Inc., 82 S.W.3d 767, 775B78 (Tex. App.CCorpus Christi
2002, orig. proceeding) (holding trial court clearly abused its discretion by
failing to order post-confirmation remand to arbitration panel to resolve
ambiguity in award and also perhaps to remedy incompleteness).  In the cases we
have found holding or suggesting that issues should be remanded to the
arbitration panel after confirmation in a case under the Federal Act or a state
arbitration act, there is no discussion of how such a remand would be
consistent with the
statutory directive, whether under section 13 of the Federal Act or an
analogous state statute, that judgments on arbitration awards should have the
same effect and be subject to the same law as any other judgment of that
court.  Likewise, no mention is made in these opinions that most cases in which
courts discuss remand to the arbitration panel involve pre-confirmation
remands. In addition, in one case, the appellate court concluded it would be
absurd to allow an arbitration panel to clarify the language of an award after
the trial court had rendered judgment on the award.  See Legion Ins. Co. v.
VCW, Inc., 198 F.3d 718, 720 (8th Cir. 1999).








 The
Lawyers have asserted that two alternative legal standards apply.  Under the
first, trial courts must order a post-confirmation remand to the original
arbitration panel whenever the trial court must interpret the language of an
award, even though the language is not ambiguous or incomplete.  The Lawyers
assert that the trial court may enforce its judgment through ministerial,
mandatory acts or by adopting an uncontested interpretation of the award
language.  This argument lacks merit.  First, the parties have not cited, and
this court has not found, any case holding that this is the appropriate
standard for determining whether the trial court should order a
post-confirmation remand.  Second, given that courts usually have to interpret
judgments before they can enforce them and that parties often dispute the
proper interpretation of judgments in enforcement proceedings, this rule would
require post-confirmation remand in many cases and would conflict with a trial
court=s broad discretion
in carrying out its duty to interpret and enforce its judgments.  See Tex. R. Civ. P. 308; Wilde, 949
S.W.2d at 332B33; Katz, 848 S.W.2d at 374.  Third, this
standard would violate the express requirement of the Federal Act and the Texas
Act that judgments rendered on arbitration awards be subject to the same law
and given the same effect as judgments not rendered on arbitration awards.[17] 
See 9 U. S. C. ' 13; Tex.
Civ. Prac. & Rem. Code Ann. ' 171.092. 
Therefore, the trial court did not clearly abuse its discretion by failing to
follow this proferred legal standard.








Under the Lawyers= second proferred
legal standard, a trial court must order a post-confirmation remand to the
original arbitration panel whenever a Acollateral dispute@ has arisen as to
the interpretation of an award=s language, even though the language is
not ambiguous or incomplete.  Some courts seem to have embraced this standard,
stating that it is an appropriate basis to remand a case to the original
arbitration panel in a proceeding to enforce an arbitration award relating to a
collective bargaining agreement under the Labor Management Relations Act (ALabor Act@).  See 29
U.S.C. ' 185 (1999); Pace
Union, Local 4-1 v. BP Pipelines, 191 F. Supp. 2d 852, 856B59 (S.D. Tex.
2002).  Though federal courts enforcing arbitration awards under the Labor Act
sometimes look to the provisions of the Federal Act for guidance, the Federal
Act does not govern the enforcement of arbitration awards relating to
collective bargaining agreements.[18] 
See Brown v. Witco Corp., 340 F.3d 209, 216B18 (5th Cir. 2003)
(concluding that Labor Act, rather than Federal Act, governs the enforcement of
arbitration awards relating to a collective bargaining agreement).  In court
proceedings relating to Labor Act arbitration awards, courts are not faced with
statutory language requiring that judgments rendered on such awards be subject to the same law and given the same
effect as  judgments not rendered on arbitration awards.  See 29 U.S.C. ' 185.  For these
reasons, we conclude that cases involving remands of labor arbitration cases
are not on point.[19]

The
parties have not cited, and this court has not found, any case holding that
trial courts should apply the Lawyers= second proffered legal standard to
determine whether to order a post-confirmation remand to the arbitration panel
in cases under the Federal Act or a state arbitration act.  Like the Lawyers= first proferred legal standard,
their second legal standard conflicts with the trial court=s broad discretion in carrying out
its duty to interpret and enforce its judgments as well as the unambiguous
language of the Federal Act and Texas Act.  See 9 U. S. C. ' 13; Tex. Civ. Prac. & Rem. Code Ann. ' 171.092; Tex. R. Civ. P. 308; Wilde, 949
S.W.2d at 332B33; Katz, 848 S.W.2d at 374. 








Though,
at times, the Lawyers appear to argue that a post-confirmation remand is
appropriate for the arbitration panel to interpret language of the award even
if that language is not part of the trial court=s judgment on the award, they do not
actually make this argument.[20]  The Lawyers
seek a remand regarding the Royalty Language, which is definitely part of the
trial court=s Judgment.  The Lawyers also seek remand regarding the Page 7 Language,
which they contend was part of the Judgment because:  (1) the arbitration panel
awarded the Lawyers relief by means of the Page 7 Language; (2) the trial court
stated in the judgment that the court confirmed the Award Ain its entirety@; and (3) the court stated that a
copy of the Award was attached to the Judgment.  Tanox asserts that the
arbitration panel did not award the Lawyers relief by means of the Page 7
Language and that, even if the panel had done so, the trial court did not award
this relief in the Judgment, and therefore the Lawyers are not entitled to it. 
The trial court did not decide these issues; instead, the trial court decided
that it, rather than the arbitration panel, would decide these issues and
interpret and enforce the Judgment.  

In this
mandamus proceeding, we presume, without deciding, the following:

!         The arbitration panel awarded the Lawyers the future interests
stated in the Page 7 Language.

!         The trial court, in its Judgment, awarded the Lawyers the
future interests stated in the Page 7 Language.

!         There are certain
circumstances under which a trial court may order a post-confirmation remand to the
arbitration panel in cases under the Federal Act or a state arbitration act.








Nonetheless,
even operating under these presumptions, we conclude that the trial court did
not clearly abuse its discretion by determining that the Lawyers have not shown
that remand is appropriate under the circumstances in this case.[21] 
Accordingly, we hold that mandamus relief is not warranted.  The trial court
did not clearly abuse its discretion by denying the Lawyers= motion to remand
or in denying their motion to reconsider.  We overrule the Lawyers= first issue.   

D.      Did the trial court clearly
abuse its discretion by denying a motion to compel arbitration of issues before
the same arbitration panel that already rendered an award that no party claims
is ambiguous and that was confirmed by final judgment?

The Lawyers also assert that the trial court clearly abused
its discretion by denying their alternative motion to compel arbitration before
the original arbitration panel.  The Lawyers have not cited any cases
supporting the notion that it is proper to grant a motion to compel arbitration
after denying a motion to remand to the original arbitration panel.  The
Lawyers state that a trial court=s confirmation of
an arbitration award and rendition of judgment thereon do not erase the parties= agreement to
arbitrate their disputes.  This statement is correct; however, the Federal Act
and the Texas Act provide that a judgment on an arbitration award has the same
effect and is subject to the same law as all other judgments of the rendering
court, which, in Texas courts, means that the trial court interprets and
enforces the judgment.  Under these statutes, the trial court=s interpretation
and enforcement do not supplant the parties= arbitration
agreement; rather, they vindicate this agreement and give effect to the end
result of the arbitration in the manner provided by the Federal Act and the
Texas Act.[22] 
The Lawyers have not shown that the trial court clearly abused its discretion
by denying their motion to compel arbitration before the original arbitration
panel.  








E.      Did the
trial court clearly abuse its discretion by denying the Lawyers= request that the
court compel arbitration before a new arbitration panel?

After moving the trial court to compel arbitration before
the original arbitration panel, the Lawyers stated that, although the parties
agree that a new arbitration panel should not be empaneled, if absolutely
necessary and required under the law, the trial court should compel arbitration
before a new arbitration panel.  Although they seek mandamus relief regarding
the trial court=s denial of this request, the Lawyers= petition does not
contain any argument, analysis, record citations or legal authority in support
of the proposition that the trial court clearly abused its discretion by
denying this request.  See Tex.
R. App. P. 52.3(h) (stating that A[t]he petition
must contain a clear and concise argument for the contentions made, with
appropriate citations to authorities and to the appendix or record@); In re
Citizens Supporting Metro Solutions, Inc., No. 07-00190-CV, 2007 WL
4277850177, at *4 (Tex. App.CHouston [14th Dist.] Oct. 18, 2007, orig.
proceeding) (mem. op.) (holding that relator waived argument because its
petition did not contain appropriate citations to the record and authorities). 
Therefore, we deny the Lawyers= petition for mandamus as to the trial
court=s denial of the
Lawyers= request that the
court compel arbitration before a new arbitration panel.  In any event, even if
the Lawyers had presented argument on this issue, we still would hold that the
trial court did not clearly abuse its discretion by concluding that it was not
absolutely necessary and required under the law to compel arbitration before a
new arbitration panel.  Accordingly, we hold that the trial court did not
clearly abuse its discretion by denying the Lawyers= motion to compel
arbitration, and we overrule the Lawyers= second issue.[23]  


                                                 V.  Conclusion








Presuming, without deciding, that the Lawyers are correct
in their interpretation of  the Page 7 Language and of the Judgment, and presuming that there are
certain circumstances under which a trial court may order a post-confirmation
remand to the original arbitration panel in cases under the Federal Act or the
Texas Act, we conclude the trial court did not clearly abuse its discretion by
determining that the Lawyers failed to show that remand is appropriate under
the circumstances of this case.  Therefore, the trial court did not clearly
abuse its discretion by denying the Lawyers= motion to remand and their motion to
reconsider this ruling.  Likewise, the trial court did not clearly abuse its
discretion by denying the Lawyers= motion to compel
arbitration before the original arbitration panel or by denying their request
that the trial court compel arbitration before a new arbitration panel.  Accordingly, we deny the Lawyers= petition for a writ of mandamus.

 

 

 

/s/        Kem Thompson Frost

Justice

 

Petition Denied and Opinion filed February 21, 2008.

Panel consists of Justices Anderson, Fowler, and
Frost.  









[1]  The intellectual property at issue involved an
antibody that Tanox envisioned could be used to treat asthma and allergies.  In
1989, Tanox partnered with Genentech, Inc. for development of the antibody, and
Genentech executed a confidentiality agreement restricting its use of Tanox=s biotechnology.  Eventually, Genentech and Tanox
elected not to continue their work together, and in 1990, Tanox entered into a
development agreement with Ciba-Geigy, Ltd. The litigation Tanox instituted, in
federal court, against Genentech arose from Genentech=s alleged misappropriation of Tanox=s biotechnology in the development of its own allergy
drug.  In turn, also in federal court, Genentech sued Tanox, and later
Ciba-Geigy, for patent infringement.  The two suits were consolidated. 





[2]  The Fee Agreement pertained only to the Lawyers= representation of Tanox as plaintiff in the
trade-secret action.  For the Lawyers=
defense of Tanox on the patent infringement claim, Tanox paid the Lawyers an
hourly fee.





[3]  Emphasis added.





[4]  When the Lawyers demanded payment of the $8 million
fee, Tanox offered to pay $7 million, less expenses of litigation, if the
Lawyers relinquished their claims under the Fee Agreement to any portion of
Tanox=s royalties.  The Lawyers did not accept that offer,
choosing instead to file, under seal, a motion to intervene to protect their
rights in the still-pending litigation between Tanox and Genentech.  Tanox
opposed the motion to intervene and, alternatively, moved to compel arbitration
of the fee dispute under the arbitration clause in the Fee Agreement. 
Thereafter, Tanox and the Lawyers entered into an agreement under which the
Lawyers agreed to withdraw their motion to intervene, Tanox agreed to pay $6,724,795.15
to the Lawyers, and both parties agreed to submit their dispute over fees to
arbitration.  In the Award, the arbitration panel granted the Lawyers the
difference between what Tanox paid under this agreement and the initial $8
million amount.





[5]  We refer to this issue as the ARoyalty Issue.@





[6]  We refer to this issue as the AManufacturing Rights Issue.@





[7]  We refer to this issue as the ADebt Forgiveness Issue.@





[8]  Unless otherwise stated, all references to a Asection@
are to the Texas Civil Practice and Remedies Code.





[9]  Tanox also asserted arguments on the merits
regarding the Royalty Issue, Manufacturing Rights Issue, and Debt Forgiveness
Issue.





[10]  The Lawyers also stated that, although the parties
agree that a new arbitration panel should not be created, if absolutely
necessary and required under the law, the trial court should compel arbitration
before a new arbitration panel.





[11]  While a motion is pending under sections 171.087,
171.088, 171.089, or 171.091, presumably  parties are free to request the trial
court to submit to the arbitration panel issues that need clarification.  





[12]  The Lawyers correctly have asserted that these two
provisionsCsection 13 of the Federal Act and section 171.092 of
the Texas ActCare Anearly
identical@ and that there is Ano
meaningful distinction@ between these two sections.  Tanox agrees with this
assessment.





[13]  A clarification by the arbitration panel before
confirmation can assist the parties in understanding the award so as to see if
there are any grounds upon which they may seek to vacate or modify the award,
and it can help the parties and the trial court in formulating an unambiguous
judgment for the trial court to render based on the award.  A clarification at this
juncture also serves to take advantage of the panel=s familiarity with the issues involved in the recent
arbitration, before the passage of time diminishes the panel members= memories regarding the issues (or availability to
re-address them), the evidence, and the panel=s award. 





[14]  In their briefing, the Lawyers have been careful not
to assert that the Award is ambiguous.  During oral argument in this court, the
Lawyers= counsel again declined to assert that the Award is
ambiguous, although counsel also did not assert that the Award is unambiguous. 
In any event, the Lawyers have not sought remand to the original arbitration
panel based on any alleged ambiguity.  





[15]  During appellate argument, counsel for the Lawyers
confirmed that they are not alleging that the Award is incomplete.  Although
the Lawyers never made such an allegation in either their trial court or
appellate filings, trial counsel for the Lawyers appeared to suggest that the
Award is incomplete during part of the oral argument in the trial court.  In
any event, it is clear from the record that the Award is not incomplete. 
Therefore, even if the Lawyers had asserted the Award is incomplete, the trial
court would not have abused its discretion in concluding the Award is
complete.  





[16] Several of the cases cited by the Lawyers involve
pre-confirmation remands.  See, e.g., Colonial Penn Ins. Co. v. Omaha
Indemnity Co., 943 F.2d 327, 333B35
(3d Cir. 1991); Mut. Fire, Marine & Inland Ins. Co. v. Norad Reinsurance
Co., 868 F.2d 52, 58 (3d Cir. 1989); Weinberg v. Silber, 140 F. Supp. 2d 712, 722B24 (N.D. Tex. 2001).  Likewise, several of the statements cited by the Lawyers are obiter
dicta.  See, e.g., M&C Corp. v. Erwin Behr GMBH & Co., KG, 326
F.3d 772, 782B83 (6th Cir. 2003); Green v.  Ameritech Corp., 200 F.3d 967, 977B78 (6th Cir. 2000); Savinis v. Goldberg, Persky & White, P.C.,
No. GD05-027781, 80 Pa. D. & C.4th 19, 22B30 (Pa. Ct. Com. Pl. 2006) (stating that Pennsylvania trial court would
consider arguments in the future to determine whether various issues should be
remanded to the arbitration panel based on ambiguity in the award, following
confirmation of the award under a Pennsylvania statute). 





[17]  The Lawyers argue a dispute exists as to what the
arbitration panel meant in the Award and that, having heard the extensive
evidence and arguments and issued the Award, the panel is in the best position
to resolve these disputes.  Even if this is true, it is a policy argument that
does not change the unambiguous language of the Federal Act and the Texas Act,
which could, but do not, provide for clarification of arbitration awards after
confirmation or for treating judgments on arbitration awards differently from
judgments following litigation.  Another policy concern might be the need for
finality, efficiency, and a prompt resolution of the issues in arbitration,
without allowing parties to seek to reopen issues years later during the
enforcement-of-judgment phase, simply by asserting that there are
interpretation disputes regarding language in the arbitration award upon which
the trial court rendered judgment.  See Golden Eagle Archery, Inc. v.
Jackson, 24 SW.3d 362, 367 (Tex. 2000) (discussing the need for finality
and stating that A[l]itigation must end at some point if the public is
to have any confidence in judgments@).





[18]  In addition, the Texas Act does not apply to such
arbitrations.  See Tex. Civ.
Prac. & Rem. Code Ann. '171.002(a)(1)
(Vernon 2005).  





[19]  Likewise, the Lawyers also rely on a case involving
the enforcement of an arbitration award under the Railway Labor Act.  See
See Brotherhood Ry. Carmen Div., Transp. Commc=ns Int=l Union v. Atchison, Topeka & Santa Fe R.R. Co., 956 F.2d 156, 157 (7th Cir. 1992).  The Federal Act
does not apply to  arbitration awards under this labor statute, and the
enforcement provisions for such awards do not contain any language stating that
judgments rendered on such awards shall be subject to the same law and given the same effect as
judgments not rendered on arbitration awards.  See 45 U.S.C. ' 159 (1999).  Therefore, this case is also not on point.





[20]  If the Lawyers had argued that the trial court did
not award them relief in the Judgment based on the Page 7 Language but that the
Lawyers wanted the court to add that relief now, this argument would have
lacked merit because the trial court has no jurisdiction to make a material
change in the substance of the relief awarded in the Judgment.  See Katz,
848 S.W.2d at 374 (stating that the only limit on a trial court=s authority to enforce its judgments is that
enforcement orders must not make a material change in the substantial
adjudicated portions of the judgment); Harris County Appraisal Dist. v. West,
708 S.W.2d 893, 896B97 (Tex. App.CHouston
[14th Dist.] 1986, no writ) (holding that trial court=s enforcement order was void because it attempted to
materially change the relief awarded in the trial court=s judgment).    





[21]  Tanox asserts that the issue of whether the trial
court abused its discretion is premature because the trial court has not yet
determined how it will enforce the Judgment or whether the Judgment is
ambiguous.  However, the Lawyers assert that the trial court clearly abused its
discretion under the legal standards they advocate.  If these legal standards
were correct, then it might have been possible to have found a clear abuse of
discretion. Therefore, this mandamus proceeding is not premature.





[22]  The Lawyers also note that, in November 1997, the
trial court ordered Tanox and the Lawyers to arbitrate all claims and
disputes.  However, the parties did arbitrate all claims and disputes, and the
present issues relate to the enforcement of the trial court=s Judgment based on the Award from that arbitration. 





[23]  Given that we have not found any clear abuse of
discretion, we do not address the Lawyers=
third issue in which they assert that they have no adequate remedy at law.